ANITA BECHTOLD AND
TIMOTHY L. SAVAGE AND KAREN M. SAVAGE,
HUSBAND AND WIFE, APPELLEES, V. MARTIN GOMEZ, APPELLANT.
576 N.W. 2d 185

Filed March 27, 1998.    No. S-96-775.

Catherine Mahern, of Creighton Legal Clinic, for appellant.

Herbert J. Elworth, of Casey and Elworth, and Mark R. Widell for appellees.

White, C.J., Caporale, Wright, Connolly, Gerrard, Stephan, and McCormack, JJ.

Wright, J.

## NATURE OF CASE

Martin Gomez appeals from an order of the Cass County Court disqualifying the Creighton Legal Clinic (Clinic) and Catherine Mahern from representing Gomez.

## SCOPE OF REVIEW

In an appeal from an order disqualifying counsel, an appellate court reviews the trial court's factual findings for clear error and ultimately makes its disqualification decision independent of the trial court's ruling. *Richardson v. Griffiths*, 251 Neb. 825, 560 N.W.2d 430 (1997).

## FACTS

On April 23, 1996, Anita Bechtold, Timothy L. Savage, and Karen M. Savage filed an "Amended Petition for Adjudication of Claim of Paternity and Right to Custody." During the course of the proceedings, the Savages moved to disqualify Mahern and the Clinic from continued representation of Gomez, alleging that such representation violated this court's decisions regarding disqualification of attorneys.

Subsequently, Bechtold moved to disqualify the Clinic. Bechtold's motion was concerned with the fact that Noah Geary had worked for Bechtold's attorney, Edward Fogarty, after having participated in the Clinic while the Clinic was representing Gomez. The motion stated that Geary was a student at the Creighton University School of Law who, with the concurrence of the Creighton faculty, including clinic director Mahern, hoped to receive a law degree in the spring of 1996 and that in February and March 1996, Geary was hired by Fogarty as an independent contractor to do research on an unrelated case.

The motion noted that Geary's employment with Fogarty was terminated on March 21, 1996, and Bechtold admitted she had no knowledge that Geary had obtained information during his employment with Fogarty that could be harmful to her case. However, Bechtold claimed that her case could be compromised because Geary was still "beholden" for his degree to Creighton

University and its faculty, including Mahern, and that, therefore, the Clinic should be barred from representing Gomez.

Gomez thereafter moved to disqualify Fogarty and any member of his law firm on the ground that Fogarty employed Geary during a time when there had been and continued to be active litigation involving Bechtold, the Savages, and Gomez. Gomez claimed that Fogarty's representation of Bechtold created a direct conflict of interest because Geary had been a participant in the Clinic while it was representing Gomez in the pending litigation.

After a hearing on April 23, 1996, the county court made the following findings of fact: Geary was a senior certified law student under the general supervision of Mahern, whose certification commenced August 21, 1995, and had not expired, changed, or been revoked as of the date of the hearing. As a part of and in conjunction with his certification, Geary was enrolled in the Clinic from August 17 to December 11, 1995, and between August 17 and December 11, the Clinic was actively representing Gomez. At some time after December 11, Geary came into the employ of Fogarty on an unrelated matter. At the time Geary was in the employ of Fogarty, Fogarty was actively representing Bechtold. At the time of the hearing, Geary was no longer in the employ of Fogarty. Geary remained a student at the Creighton University School of Law, but was no longer enrolled in the Clinic.

Basing its order in part upon our holdings in *State ex rel. Creighton Univ. v. Hickman*, 245 Neb. 247, 512 N.W.2d 374 (1994); *State ex rel. FirsTier Bank v. Buckley*, 244 Neb. 36, 503 N.W.2d 838 (1993); and *State ex rel. Freezer Servs., Inc. v. Mullen*, 235 Neb. 981, 458 N.W.2d 245 (1990), on May 6, 1996, the county court concluded that because Geary was in possession of confidences relating to Gomez, Fogarty was disqualified from further representation of Bechtold. In addition, the court disqualified the Clinic because of the continuing relationship between Geary and Mahern that the court opined was created by Geary's status as a certified senior law student under Mahern's supervision. The court explained that the rule of senior practice and the fact that Mahern was still listed as Geary's supervising attorney created a relationship no different in the eyes of the

court than a legal partnership. Therefore, the court concluded there was an appearance of impropriety and a violation of the "bright line rule" presumption of shared confidences. Although the court did not disqualify Mahern in its May 6 order, the court stated that if requested, the presumption of shared confidences and the appearance of impropriety would require that Mahern be disqualified from representing Gomez in the proceedings.

On May 16, 1996, Gomez filed a pleading entitled "Motion to Reconsider & Motion for Hearing." Gomez moved the county court "to reconsider its Opinion and Order of May 6, 1996, wherein it disqualified Catherine Mahern and the Creighton Legal Clinic as legal representative[s] for . . . Gomez." On June 4, Bechtold and the Savages jointly moved the court for an order expanding the May 6 order to specifically include disqualification of Mahern as counsel for Gomez. Bechtold and the Savages pointed out that the motion previously filed by the Savages had requested the court to disqualify both Mahern and the Clinic, but that the order disqualified only the Clinic.

On June 11, 1996, the county court stated that it was still of the opinion that the Clinic should be disqualified, and the court sustained Bechtold and the Savages' motion to disqualify Mahern. On July 8, Gomez appealed from the June 11 order.

## ASSIGNMENTS OF ERROR

Gomez asserts that the county court erred (1) in finding both an appearance of impropriety and a presumption of shared confidences by Mahern and the Clinic, (2) in finding that Mahern supervised or held a confidential relationship with Geary, (3) in applying the bright line rule to Mahern and the Clinic, (4) in failing to properly apply the balancing test, and (5) in failing to address whether Mahern's disqualification would deprive Gomez of counsel.

## ANALYSIS

We first address our jurisdiction to consider the Clinic's disqualification. The Clinic was disqualified by the county court's May 6, 1996, order. Gomez did not file a notice of appeal from the May 6 order, but waited to file his appeal until after the court's June 11 order on his "Motion to Reconsider" and

Bechtold and the Savages' motion for expansion of the May 6 order. In order to vest an appellate court with jurisdiction, the notice of appeal must be filed within 30 days of the entry of the final order or the overruling of a motion for new trial. *Tri-County Landfill v. Board of Cty. Comrs.*, 247 Neb. 350, 526 N.W.2d 668 (1995). To determine whether we have jurisdiction to consider the May 6 order, we address whether Gomez' "Motion to Reconsider" and the attached affidavit constitute a motion for new trial.

Neb. Rev. Stat. § 25-1144 (Reissue 1995) provides:

> The application [motion for new trial] must be by motion upon written grounds, filed at the time of making the motion. It shall be sufficient, however, in assigning the grounds of the motion to assign the same in the language of the statute and without further or other particularity. The causes enumerated in section 25-1142, subdivisions (2), (3) and (7), of this code must be sustained by affidavits showing their truth, and may be controverted by affidavits.

Neb. Rev. Stat. § 25-1142 (Reissue 1995) provides:

> A new trial is a reexamination in the same court of an issue of fact after a verdict by a jury, report of a referee, or a decision by the court. The former verdict, report or decision shall be vacated and a new trial granted on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of such party . . . (6) that the verdict, report or decision is not sustained by sufficient evidence, or is contrary to law . . . .

Few cases in Nebraska discuss whether a postjudgment motion labeled as a "motion to reconsider" can be considered as a motion for new trial. In *Lewis v. Gallemore*, 173 Neb. 441, 113 N.W.2d 595 (1962), the defendant filed a motion asking the court to reconsider the action taken on a particular date. The court found that the order in question was ministerial in nature and was not a final order from which an appeal could be taken. The issue of the validity of such motion was not discussed. In *Ruwe v. Farmers Mut. United Ins. Co.*, 238 Neb. 67, 469 N.W.2d 129 (1991), we discussed a motion filed by the plaintiff for reconsideration of the ruling on the defendant's motion for

summary judgment or, alternatively, for a new trial. We did not discuss the validity of the motion for reconsideration, finding that although the plaintiff's motion for new trial was not timely, the plaintiff nonetheless filed a notice of appeal within 30 days of the final order as required.

In *Abboud v. Cutler*, 238 Neb. 177, 469 N.W.2d 763 (1991), the plaintiffs filed a pleading entitled "Motion to Vacate Dismissal" on January 18, 1989, from the order of dismissal of January 13. Later, the plaintiffs filed a pleading entitled "Motion for Reconsideration & Motion for New Trial" on January 26. On January 25, the court entered its docket entry overruling the "Motion to Vacate Dismissal" and dismissing the case. The notice of appeal was filed on February 13. The bill of exceptions consisted of the record of a hearing held February 8 on the plaintiffs' motion for reconsideration of the dismissal. The defendants argued that the court was without jurisdiction because the plaintiffs did not file a notice of appeal within 30 days of the order of dismissal of January 13. We held that the "Motion to Vacate Dismissal" was the equivalent of a motion for a new trial, citing *Woodmen of the World Life Ins. Soc. v. Peter Kiewit Sons' Co.*, 196 Neb. 158, 241 N.W.2d 674 (1976) (new trial is reexamination in same court of issue of fact after verdict by jury, report of referee, or decision by court).

In *Horace Mann Cos. v. Pinaire*, 1 Neb. App. 907, 511 N.W.2d 540 (1993), the Nebraska Court of Appeals concluded from the contents of the postsummary judgment motions labeled "Motion for Reconsideration" that they were, in fact, motions for new trial because they were based on an allegation that the decision of the court was not sustained by sufficient evidence and was contrary to law. As such, the Court of Appeals treated them as motions for new trial, which had to be filed within 10 days of the district court's order granting summary judgment.

The "Motion to Reconsider" filed by Gomez included the affidavit of Connie Kearney, an adjunct professor with the Clinic. The affidavit stated in part: "The court's May 6, 1996, Opinion and Order extends the 'bright line' rule beyond the interpretation and parameters set forth in present decisional law in that the court seems to hold that the senior certification process is the equivalent of a legal partnership."

We decline to treat Gomez' "Motion to Reconsider" as a motion for new trial. A motion for reconsideration does not toll the time for appeal and is considered nothing more than an invitation to the court to consider exercising its inherent power to vacate or modify its own judgment. See *Russell v. Luevano*, 234 Neb. 581, 452 N.W.2d 43 (1990). Accordingly, the time for filing an appeal as to the disqualification of the Clinic has expired, and we have no jurisdiction to consider Gomez' arguments involving such disqualification.

We next consider Mahern's disqualification. On June 11, 1996, the county court extended its May 6 order disqualifying the Clinic to include Mahern. Gomez timely perfected his appeal from the June 11 order by filing a notice of appeal on July 8. Therefore, we have jurisdiction to consider the order disqualifying Mahern.

In its order, the county court determined that the bright line rule applied to irrebuttably presume that Geary had acquired confidences of Bechtold and the Savages while working for Fogarty and that he had subsequently shared those confidences with Mahern. Under the principles of loyalty and confidentiality set forth in the Code of Professional Responsibility, "an attorney, after receiving the confidence of a client, may not enter the service of others whose interests are adverse to such client's interest in the same subject matter to which the confidence relates, or in matters so closely allied thereto as to be, in effect, a part thereof." *State ex rel. FirsTier Bank v. Mullen*, 248 Neb. 384, 389, 534 N.W.2d 575, 579 (1995).

Confidences and secrets possessed by an attorney are presumptively possessed by other members of the attorney's firm. *State ex rel. FirsTier Bank v. Mullen, supra*. Therefore, an attorney who leaves the first firm is presumed to have acquired client confidences during the attorney's tenure at that firm, regardless of whether the attorney was actually privy to any confidential communication. It is further presumed that the attorney has shared or will share those client confidences with members of any subsequent firm with which the attorney becomes employed. *State ex rel. Freezer Services, Inc. v. Mullen*, 235 Neb. 981, 458 N.W.2d 245 (1990). In *State ex rel. Wal-Mart v. Kortum*, 251 Neb. 805, 810-11, 559 N.W.2d 496, 501 (1997),

we explained that "an attorney or law firm must avoid the present representation of a cause against a client that the attorney or law firm formerly represented, and which cause involves a subject matter which is the same as or substantially related to that formerly handled by the attorney or law firm." Accord *Richardson v. Griffiths*, 251 Neb. 825, 560 N.W.2d 430 (1997).

In *Kortum*, we noted that the rule stated above has been applied only in the context where an attorney or attorneys ceased working for a law firm that represented a particular client and then began working for another law firm in a position adversarial to that particular client. We have never applied the rule of presumed acquisition and sharing of client confidences to disqualify the original firm from continued representation of the client. Thus, this rule would not have been applicable to disqualify the Clinic on the grounds that Geary left the Clinic and did unrelated research for Fogarty. However, as previously explained, Gomez did not timely appeal from the order disqualifying the Clinic, and we have no jurisdiction to reverse that order.

The issue is whether Geary's doing research for Fogarty on an unrelated matter disqualifies Mahern from further representation of Gomez. For the reasons set forth herein, we conclude that Mahern is not disqualified from such further representation.

First, we find that the county court erred in applying an irrebuttable presumption that Geary acquired client confidences of Bechtold and the Savages during his employment with Fogarty. Geary apparently worked as an independent contractor for Fogarty for approximately 6 weeks doing research and investigation in an unrelated criminal matter. Geary was not certified to work under Fogarty's supervision and, apparently, never went to Fogarty's office during the time that he worked for Fogarty.

Under the facts of the present case, Geary had no real or perceived access to Fogarty's client files. No evidence established that Geary in fact gained any confidence or had any information regarding Bechtold or the Savages while working for Fogarty. Since there is no evidence of gained confidences, then Geary could not have shared any such confidences with Mahern or the Clinic so as to warrant disqualification.

The county court also erred in concluding that after Geary's contact with Fogarty, Geary had a relationship with Mahern and the Clinic such that if he had acquired confidences of Bechtold and the Savages, it would be irrebuttably presumed that he shared those confidences. Despite its finding that Geary was not enrolled in the Clinic during or subsequent to his employment with Fogarty and despite the undisputed evidence that Geary had no actual contact with Mahern and the Clinic during or after his employment with Fogarty, the court relied on Geary's senior certification to erroneously conclude that the certification created a condition no different than that of a legal partnership. Based on this continuing "partnership," the court irrebuttably presumed that Geary shared with Mahern confidences which, as discussed above, the court presumed he gained through his work for Fogarty.

In the cases where we have applied the irrebuttable presumption of shared confidences, the context has been that of an actual partnership or employment relationship. See, *Richardson v. Griffiths, supra* (attorney had previous attorney-client relationship with plaintiff and was member of firm which represented defendant in same matter); *State ex rel. Creighton Univ. v. Hickman*, 245 Neb. 247, 512 N.W.2d 374 (1994) (attorney for plaintiff who later worked as clerical help for firm representing adverse party); *State ex rel. FirsTier Bank v. Buckley*, 244 Neb. 36, 503 N.W.2d 838 (1993) (attorney at firm representing defendant's predecessor moved to firm representing plaintiff in substantially related matter); *State ex rel. Freezer Servs., Inc. v. Mullen*, 235 Neb. 981, 458 N.W.2d 245 (1990) (attorney who was intimately involved with litigation on behalf of plaintiff moved to law firm representing defendant in same litigation).

There is no evidence that Geary had an employment-related relationship with Mahern or the Clinic after he completed the research project for Fogarty. An undisputed affidavit submitted on behalf of Gomez states that after December 11, 1995, which was the end of the law school semester, Geary had no contact with any legal matter in the Clinic and was no longer under Mahern's supervision. Geary was employed by Fogarty after December 11. Although Geary did not withdraw his senior certification after he ceased being enrolled in the Clinic, the certi-

fication states only that Geary met the requirements "to perform as a legal intern under the general supervision of Catherine Mahern." The certification does not indicate that Geary was actually working under Mahern's supervision, but only that he was qualified to be under her supervision.

We conclude that Geary's senior certification did not create a relationship to which the irrebuttable presumption of shared confidences should have been applied by the county court to disqualify Mahern. Thus, even disregarding the fact that Geary was not an attorney and did not in fact acquire any client confidences through his work for Fogarty, Mahern and the Clinic cannot fall under the prohibition announced in *Hickman* that "[e]mploying, in any capacity, one who was an attorney on the other side of a case carries with it the appearance of impropriety." 245 Neb. at 253, 512 N.W.2d at 378. Nor can it be said that Mahern violated the bright line rule that "an attorney or law firm must avoid the present representation of a cause against a client that the attorney or law firm formerly represented, and which cause involves a subject matter which is the same as or substantially related to that formerly handled by the attorney or law firm." *State ex rel. Wal-Mart v. Kortum*, 251 Neb. 805, 810-11, 559 N.W.2d 496, 501 (1997). Accord *Richardson v. Griffiths*, 251 Neb. 825, 560 N.W.2d 430 (1997).

On July 23, 1997, this court adopted Canon 5, DR 5-109, of the Code of Professional Responsibility entitled "Support Personnel of a Law Firm—Conflict of Interest." DR 5-109 states:

(A) For purposes of this rule, a support person shall mean any person, other than a lawyer, who is associated with a lawyer or a law firm and shall include but is not necessarily limited to the following: law clerks, paralegals, legal assistants, secretaries, messengers, and other support personnel employed by the law firm. Whether one is a support person is to be determined by the status of the person at the time of the participation in the representation of the client.

(B) A lawyer shall not knowingly allow a support person to participate or assist in the representation of a current client in the same or a substantially related matter in

which another lawyer or firm with which the support person formerly was associated had previously represented a client:

(1) Whose interests are materially adverse to the current client; and

(2) About whom the support person has acquired confidential information that is material to the matter, unless the former client consents after consultation. The support person shall be considered to have acquired confidential information that is material to the matter unless the support person demonstrates otherwise.

(C) If a support person, who has worked on a matter, is personally prohibited from working on a particular matter under subsection (B), the lawyer or firm with which that person is presently associated will not be prohibited from representing the current client in that matter if:

(1) The former client consents, or

(2) There is no genuine threat that confidential information of the former client will be used with material adverse effect on the former client because the confidential client information communicated to the support person while associated with the former firm is not likely to be significant in the current client's case.

Thus, although DR 5-109 was not in effect on June 11, 1996, it is consistent with our decision herein. In accordance with DR 5-109, the evidence demonstrates that Geary did not acquire confidential information about Bechtold and/or the Savages.

## CONCLUSION

For the reasons stated herein, we reverse the portion of the county court's June 11, 1996, order disqualifying Mahern as counsel for Gomez. Because we do not have jurisdiction over the May 6 order disqualifying the Clinic, we dismiss that portion of Gomez' appeal.

REVERSED IN PART, AND IN PART DISMISSED.