ST. JOSEPH DEVELOPMENT CORPORATION, A KANSAS CORPORATION, APPELLANT, V. BERNADETTE SEQUENZIA, APPELLEE.

585 N.W. 2d 511

Filed October 13, 1998. No. A-97-353.

Scott A. Meyerson, of Hotz & Weaver, and W. Thomas Gilman, of Redmond & Nazar, L.L.P., for appellant.

Dennis J. Green, of Green & Bubak, for appellee.

SIEVERS and MUES, Judges, and HOWARD, District Judge, Retired.

Sievers, Judge.

This case involves enforcement of a Kansas judgment through the Nebraska courts. The district court for Douglas County agreed with the claim of the judgment debtor, Bernadette Sequenzia, that the judgment was dormant and unenforceable. The judgment creditor, St. Joseph Development Corporation (St. Joseph), appeals.

## FACTUAL BACKGROUND

There was very brief oral testimony in the district court because the case was tried mainly on a stipulation of facts and exhibits. St. Joseph obtained a judgment against Sequenzia and her now deceased husband in the district court for Sedgwick County, Kansas, on May 8, 1990. The principal amount of the judgment was $11,281.41, and prejudgment interest as well as costs were awarded. Postjudgment interest has accrued, making the total judgment about $20,000, but the precise amount of the judgment is not pertinent to our decision. On May 12, 1992, Sequenzia filed a chapter 7 bankruptcy in the U.S. Bankruptcy Court for the District of Colorado, and St. Joseph was listed as an unsecured creditor. Notice of that filing was mailed to St. Joseph's Kansas attorney in Wichita, and Sequenzia's discharge was entered October 16. While these facts concerning the bankruptcy are in the factual stipulation, there is no claim in the briefs that the bankruptcy has any bearing on the outcome or that it discharged this debt. Thus, we do not discuss the bankruptcy any further.

The Kansas judgment was filed with the district court for Douglas County, and the parties expressly stipulated that "[t]he Kansas Judgment which was filed in the District Court of Douglas County on March 12, 1992, created a judgment lien on the Real Property upon being filed with the District Court."

The reference to real property was to a residence located at 1201 South 44th Street in Omaha, which was the home of Sequenzia's mother. The parties stipulated that Sequenzia along with Thomas C. Marotto and Mollie M. Marotto held title as joint tenants with the right of survivorship from and after January 5, 1979, pursuant to a survivorship warranty deed. On April 13, 1992, after the Kansas judgment created a judgment

lien on the South 44th Street property, as recited in the parties' stipulation, Sequenzia transferred her interest in that property to Thomas C. Marotto and Mollie M. Marotto via warranty deed. The parties stipulated that at the time of that transfer, "[St. Joseph's] lien on the Real Property was not satisfied prior to, or at the time of, the April 13, 1992 transfer." The real property on South 44th Street was later sold, and one-third of the proceeds, or $21,666.67, was placed in an escrow agreement with ATI Title Company (ATI) pursuant to a written escrow agreement signed by Sequenzia on May 6, 1996. That money is acknowledged by ATI to be Sequenzia's. The escrow agreement makes the disbursement of these funds dependent upon the outcome of this proceeding.

We note in passing that on May 31, 1996, St. Joseph filed a motion in the Kansas courts to determine dormancy of the judgment, and the Kansas trial court, on June 28, determined that the judgment against Sequenzia was not dormant under Kansas law. The parties have stipulated in this case that an appeal of that decision was pending before the Kansas Court of Appeals at the time the instant case was tried in the district court for Douglas County. On September 11, 1998, the Kansas Court of Appeals released its opinion holding that the judgment had not become dormant under Kansas law.

## PROCEDURAL BACKGROUND

This case before us has its genesis in the filing by St. Joseph on October 17, 1996, of an affidavit of garnishment asserting that ATI was holding property of Sequenzia's. On October 23, ATI filed answers to interrogatories, in which it stated that it had $21,666.67 of Sequenzia's money in its possession. Sequenzia filed a request for hearing on October 25, using the preprinted form served with the garnishment. Sequenzia asserted in that form that the funds sought were exempt from garnishment. There are no other pleadings putting this case at issue, but when the matter came on for hearing before the district court for Douglas County, the court announced that it was a hearing on the "objection of the defendant to a garnishment." Counsel for Sequenzia, before the introduction of evidence, told the court that there were two arguments "in terms of these funds

not being garnishable. One is that the judgment is dormant. Now, intertwined with that is the fact that the defendant here filed bankruptcy and so I suppose if they had a valid judgment, that bankruptcy discharged the debt." Nothing more at the trial level, or in the briefs filed here, was said about the bankruptcy.

On February 21, 1997, the district court decided the case by an order which found that the Kansas judgment was filed in the district court for Douglas County on March 2, 1992, and that no action was taken to enforce the judgment in Nebraska until this garnishment action. The court found that the period of time required for a judgment to become dormant is "governed by the laws of the filing forum [i.e.,] Nebraska," which is 5 years. The court found that the 5 years ran from the time "the judgment is originally entered, and not from the time that the foreign judgment is registered." The court then found that "no action having been taken to execute on the judgment since January 10, 1991 until May 31, 1996, more than five years had elapsed and, therefore, the judgment had become dormant at the time this garnishment was filed." Consequently, the court found that the funds were not owed on the judgment and that the objection to the garnishment should be sustained.

Within 10 days of that decision, St. Joseph filed a "Motion for Reconsideration," requesting a new hearing on the grounds that the decision was not sustained by sufficient evidence, that it was contrary to the laws of the State of Nebraska, and that there was error of law. The district court held a hearing on the motion to reconsider, which is not part of the record, on March 7, 1997, and on March 10 the court's docket reflects: "Plaintiff's motion to reconsider is denied." The notice of appeal was filed March 28.

## ASSIGNMENT OF ERROR

St. Joseph argues on appeal that the trial court erred in determining that under the Uniform Enforcement of Foreign Judgments Act (UEFJA), the time for determination of dormancy runs from the time that the judgment was originally entered in the foreign jurisdiction rather than from the time the foreign judgment was registered in Nebraska.

## STANDARD OF REVIEW

■ An appellate court is obligated to reach an independent conclusion upon questions of law. *Porter v. Smith*, 240 Neb. 928, 486 N.W.2d 846 (1992).

## JURISDICTION

■ We are initially faced with a jurisdictional question which stems from the "Motion for Reconsideration" detailed above and the decision of the Nebraska Supreme Court in *Bechtold v. Gomez*, 254 Neb. 282, 576 N.W.2d 185 (1998). In *Bechtold*, the trial court had entered an order disqualifying the Creighton Legal Clinic from participation in the underlying lawsuit. A motion to reconsider was filed, supported with an affidavit which asserted that the applicable rule of law was being extended by the trial court beyond the parameters set forth in existing decisions. The appeal from the order of disqualification of May 6, 1996, was not filed until after the trial court's order on June 11 denying the motion to reconsider. Observing that few cases discuss whether a postjudgment motion labeled a "motion to reconsider" is indeed a motion for new trial, the court, citing *Russell v. Luevano*, 234 Neb. 581, 452 N.W.2d 43 (1990), held that "[a] motion for reconsideration does not toll the time for appeal and is considered nothing more than an invitation to the court to consider exercising its inherent power to vacate or modify its own judgment." *Bechtold*, 254 Neb. at 288, 576 N.W.2d at 189-90. *Russell, supra*, held that where a trial court acts as an intermediate court of appeals, a motion for new trial is not appropriate and does not toll the time for filing an appeal.

The Supreme Court in *Bechtold*, 254 Neb. at 288, 576 N.W.2d at 189, expressly "decline[d] to treat [the] 'Motion to Reconsider' " as a motion for new trial. Immediately before saying this, the opinion in *Bechtold* references our opinion in *Horace Mann Cos. v. Pinaire*, 1 Neb. App. 907, 511 N.W.2d 540 (1993), where we treated a motion labeled "motion for reconsideration" as a motion for new trial where, as here, it was based on an allegation that the decision of the court was not sustained by sufficient evidence and was contrary to law. *Horace Mann*

*Cos.* was not expressly overruled by *Bechtold*. Perhaps the *Bechtold* court intended to announce a concrete rule that a post-judgment pleading entitled "Motion for Reconsideration" never acquires the status or office of a motion for new trial so as to toll the running of the 30 days to perfect an appeal to a higher court. However, we are frankly uncertain if that was the intent. But, because *Bechtold* does not overrule *Horace Mann Cos.*, we do not extend the holding of *Bechtold* to a holding that jurisdiction was not perfected in the instant case. Accordingly, we have jurisdiction and now turn to the merits of this case.

## ANALYSIS

■ This case of apparent first impression in Nebraska involves the interface between the Nebraska dormancy of judgment statute and the UEFJA. The dormancy statute is found at Neb. Rev. Stat. § 25-1515 (Reissue 1995), and it provides:

> If execution shall not be sued out within five years from the date of any judgment that now is or may hereafter be rendered in any court of record in this state, or if five years shall have intervened between the date of the last execution issued on such judgment and the time of suing out another writ of execution thereon, such judgment, and all taxable costs in the action in which such judgment was obtained, shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor.

In short, if some sort of execution (defined as "legal process of enforcing the judgment," Black's Law Dictionary 568 (6th ed. 1990)) is not attempted within 5 years of the rendition of the judgment or 5 years pass between executions, the judgment becomes dormant and not enforceable as a lien on the judgment debtor's property. The case before us involves a garnishment, which we consider to be an execution to enforce a judgment within the meaning of § 25-1515. See *NC+ Hybrids v. Growers Seed Assn.*, 219 Neb. 296, 363 N.W.2d 362 (1985) (holding that through garnishment in aid of execution, garnishee becomes "stakeholder" of property belonging to one of proper parties to lawsuit for which execution is sought and that garnishment is ancillary procedure whereby judgment creditor seeks to collect judgment).

The UEFJA, in effect March 12, 1992, the date the Kansas judgment was filed in Nebraska in the instant case, can be found at Neb. Rev. Stat. §§ 25-1587 through 25-15,104 (Reissue 1989). (We note that the Nebraska Uniform Enforcement of Foreign Judgments Act is now codified at Neb. Rev. Stat. §§ 25-1587.01 through 25-1587.09 (Reissue 1995).) The UEFJA defined a foreign judgment as any judgment, decree, or order of a court "which is entitled to full faith and credit in this state." See § 25-1587(1). Section 25-1589, in effect at the time of filing in the instant case, provided that a petition for registration could be filed in Nebraska if it contained a copy of the judgment to be registered, the date of its entry, and the record of any subsequent entries affecting it. Section 25-1589 also provided that the clerk of the registering court was to notify the clerk of the court which rendered the original judgment that petition for registration had been made.

The judgment in the instant case was obtained in Kansas on May 8, 1990, and filed in the district court for Douglas County, Nebraska, on March 12, 1992. In ruling upon Sequenzia's challenge to the garnishment, the district court reasoned, as a matter of law, that the time for determination of dormancy "runs from the time that the judgment is originally entered, and not from the time that the foreign judgment is registered." The district court then found that no action was taken to execute on the judgment from January 10, 1991, until May 31, 1996, a period of more than 5 years, which made the judgment dormant under § 25-1515. There is an inconsistency in the trial court's findings, because it ruled that dormancy runs from the time the judgment is originally rendered, but the trial court actually counted the time between attempts in Kansas to enforce the judgment, i.e., between January 10, 1991, when action to enforce the judgment was taken in Kansas, and May 21, 1996, when an order for aid in execution was issued in the Kansas court.

However, Sequenzia's argument here is not really in support of the trial judge's view that dormancy is determined by counting 5 years from when the judgment is originally entered in the other state rather than from when it was registered in Nebraska. Instead, Sequenzia argues that personal jurisdiction was never

obtained over her. She argues that under the UEFJA, in effect at the time of filing in Nebraska on March 12, 1992, she was entitled to have summons issued and served upon her in a manner provided for obtaining jurisdiction of the person, citing § 25-1590, a statute which has now been repealed.

■ Sequenzia is correct that said statute provided for service of summons upon the judgment debtor "as in an action brought upon a foreign judgment, in the manner authorized by the law of this state for obtaining jurisdiction of the person." See § 25-1590. The first difficulty with Sequenzia's argument is that in the trial court, Sequenzia stipulated as follows: "The Kansas Judgment which was filed in the District Court of Douglas County on March 12, 1992, created a judgment lien on the Real Property upon being filed with the District Court." Sequenzia appears to have stipulated away any alleged lack of personal jurisdiction. There is no doubt that a party is bound by its stipulations. See *Ehlers v. Perry*, 242 Neb. 208, 494 N.W.2d 325 (1993).

The next difficulty with Sequenzia's argument is that § 25-1592, which was in effect at the time the Kansas judgment was registered, provided:

> At any time after registration and regardless of whether jurisdiction of the person of the judgment debtor has been secured or final judgment has been obtained, a levy may be made under the registered judgment upon any property of the judgment debtor which is subject to execution or other judicial process for satisfaction of judgments.

Additionally, *Sullivan v. Sullivan*, 168 Neb. 850, 854, 97 N.W.2d 348, 352 (1959), in speaking of a registered judgment and referencing § 25-1592, states that "[i]t [registered judgment] was therefore a judgment and required to be so regarded and recognized on and after registration." *Sullivan* also holds that once recognized as a judgment, which under *Sullivan* means upon registration, the judgment creditor has by right of levy the same rights as the holder of a "domestic judgment" with reference to the property of the judgment debtor. As a consequence, as soon as the Kansas judgment was registered, it was like a Nebraska judgment and St. Joseph could execute upon it. Service of process upon Sequenzia was not necessary.

■ The next problem with Sequenzia's argument is that it is a position not taken in the trial court and not ruled upon by the trial court. It is a well-established rule of our jurisprudence that absent plain error, an appellate court will not consider an issue on appeal which was not presented to or passed upon by the trial court. *Metropolitan Utilities Dist. v. Twin Platte NRD*, 250 Neb. 442, 550 N.W.2d 907 (1996).

A judgment goes dormant under Nebraska law if 5 years pass without execution. The execution here began with the summons and garnishment filed October 17, 1996. Therefore, had 5 years passed without execution at the time of the garnishment? The answer of course depends upon what event one begins counting from. The district court found that the law was to begin counting from the date of the Kansas judgment. To the extent that there is law supporting that view, it is definitely a minority view, and the law is now rather well established, in jurisdictions which have decided the question, that the count for dormancy begins on the date that the foreign judgment is brought to a state and registered. In the instant case, this would be March 12, 1992, and of course 5 years had not passed from that date to the execution via garnishment filed October 17, 1996.

Our research reveals that there are three seminal cases on the subject which we find persuasive and controlling. We begin with *Warner v. Warner*, 9 Kan. App. 2d 6, 668 P.2d 193 (1983). On January 2, 1971, Charles Warner was ordered by a Missouri court to pay separate maintenance to Erna Warner in the amount of $600 per month. The Missouri court reduced the monthly payments to $300 per month on April 26, 1976. Erna registered the Missouri judgment in Johnson County, Kansas, as a foreign support order on November 16, 1976, alleging that there were past due payments of $26,000. Charles moved for a finding in the Kansas court that the payments which had accrued before October 1976, 5 years before an attempted Kansas execution in October 1981, had become dormant judgments. The Kansas court first determined several issues relating to the fact that the case involved a series of monthly amounts which were accruing, issues not pertinent here. The court then turned to the effect of the Kansas dormancy statute. The Kansas court referred to the general foreign judgments act, which provided that once a

foreign judgment is registered, it is to be treated as if it were a Kansas judgment. Like Nebraska law, Kansas law provided that a Kansas judgment becomes dormant 5 years after its effective date. Thus, the Kansas court asked what the effective date of a foreign judgment was for dormancy purposes. The court answered that it was the date it was registered, reasoning:

> Thus a foreign judgment four years and eleven months old when registered does not become dormant in Kansas a month later. Such a rule would defeat the purpose of the registration act and be totally inconsistent with the result achieved if the judgment holder sued on the foreign judgment, as permitted by K.S.A. 60-3006. Instead, registration of a foreign judgment which is enforceable when registered gives the judgment creditor a new and additional five years to execute, regardless of when the judgment was rendered in the foreign state.

*Warner*, 9 Kan. App. 2d at 8, 668 P.2d at 195.

The next case of consequence is *Pan Energy v. Martin*, 813 P.2d 1142 (Utah 1991), where the plaintiff obtained an Oklahoma judgment in September 1982 and registered it in Utah in August 1987 under that state's version of the UEFJA, the Utah Foreign Judgment Act. Under Oklahoma law, a judgment becomes unenforceable without execution within 5 years. As a result, the Oklahoma judgment became dormant in Oklahoma, the originating state, 1 month after the judgment creditor filed in Utah, which had an 8-year statute of limitations before dormancy. See Utah Code Annot. § 78-12-22 (1987). The Utah Foreign Judgment Act provided, like Kansas' general foreign judgments act, that the judgment, once registered in Utah, becomes "a judgment of a district court of this state . . . ." (Emphasis omitted.) *Pan Energy*, 813 P.2d at 1144. Accordingly, the Utah court held that because judgments properly filed in Utah become Utah judgments, the Utah statute of limitations applied to enforcement of the judgment in Utah.

The Utah court, in support of its holding, recited that the federal courts have taken a similar approach with respect to a similar federal registration statute. The Utah court cited Justice Blackmun's opinion, while he was on the 8th Circuit Court of Appeals, in *Stanford v. Utley*, 341 F.2d 265 (8th Cir. 1965). In

*Stanford,* the court allowed enforcement of a judgment in Missouri even though it was unenforceable in Mississippi, the state where it was rendered, because the Missouri statute of limitations had not yet expired. Justice Blackmun wrote: "We feel that registration provides, so far as enforcement is concerned, the equivalent of a new judgment of the registration court." *Utley,* 341 F.2d at 268. The Utah court adopted this view, holding that because the Oklahoma judgment was filed under the Utah Foreign Judgment Act, it could be enforced as a Utah judgment, irrespective of subsequent dormancy in the state of rendition. Finally, referencing the Full Faith and Credit Clause, the Utah court held that Utah may apply its own statute of limitations to the enforcement of a foreign judgment.

Finally, we turn to a case decided since the parties briefed this issue, *Drllevich Const., Inc. v. Stock,* 958 P.2d 1277 (Okla. 1998). The Oklahoma Supreme Court overruled its earlier decision to the contrary and held that an enforceable foreign judgment which was registered in Oklahoma under the Uniform Enforcement of Foreign Judgments Act is considered a new judgment for purposes of the Oklahoma 5-year dormancy statute. The Oklahoma court relied heavily on *Pan Energy, supra,* and *Warner, supra,* as well as reviewing other decided cases to conclude that a foreign judgment, if enforceable when registered, is then subject to the dormancy statute of the registering state.

In the case at hand, we note the stated effect of the UEFJA, which is that once registered, levy can be made on a foreign judgment as to any property of the judgment debtor subject to judicial process for the satisfaction of judgments. Nebraska judgments go dormant only if 5 years pass without execution thereupon. In this case, the judgment from Kansas became the functional equivalent of a Nebraska judgment in March 1992 and execution via garnishment was undertaken in October 1996. We note that § 25-1587.03 (Reissue 1995) now expressly provides that a registered foreign judgment shall be treated by the clerk in the same manner as a "judgment of a court of this state." Thus, 5 years had not passed between when the Kansas judgment became a Nebraska judgment and its execution via garnishment. When effect is given to the Nebraska dormancy

statute, it naturally follows that the judgment was not dormant under § 25-1515.

## CONCLUSION

For the foregoing reasons, the district court was incorrect in counting the 5 years from either the date of last execution in Kansas or the date of the Kansas judgment and was incorrect in holding that the funds held by the garnishee, ATI, were not subject to garnishment.

REVERSED.