STATE OF NEBRASKA, APPELLEE, V.
GARY W. POPE, APPELLANT.
318 N.W.2d 883

Filed April 30, 1982. No. 44492.

Steven Lefler and Frederick Gray of Warren C. Schrempp Law Offices, for appellant.

Paul L. Douglas, Attorney General, and Lynne Fritz, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and BRODKEY, J., Retired.

KRIVOSHA, C.J.

The appellant, Gary W. Pope, convicted of the crime of first degree murder and sentenced to life imprisonment, has now appealed to this court. In this appeal he does not raise any issues as to the sufficiency of the evidence upon which his conviction was based but, rather, maintains that the trial court erred in failing to declare a mistrial on the court's own motion when, during trial, it allegedly became apparent that Pope's trial counsel was acting under an actual conflict of interest. We believe that the claim is without merit and the conviction and sentence must be affirmed.

Pope was charged with the crime of murder in the first degree in connection with the slaying of Richard Don Rogers, whose body was found in the vicinity of Ashland, Nebraska, on September 14, 1979. At a conference with the court held the day before trial

began, the State requested leave to endorse the names of four additional witnesses on the information. The State advised the court and Pope's trial counsel that two of the individuals, Leisa Green and Daniel Donovan, were known to Pope's trial counsel and the defendant. Pope's trial counsel acknowledged that they were his clients, and nothing more was said in that regard.

During the course of the trial, both Green and Donovan testified for the State. Donovan testified that he was a close friend of Pope and had known him for about 5 years. The balance of his testimony was of little significance to the State's case. On cross-examination, Donovan testified that, to the best of his knowledge, Pope never had any guns and that the victim was a friend of Pope's.

Green testified that she had known Pope for about 3½ years and she had lived with him during the preceding year. She likewise gave no testimony on direct examination which was in any way harmful to Pope.

On the third day of trial, after the State's rebuttal witnesses had testified, a conference was held in chambers with the court and all counsel present. The record reflects the following conversation:

"THE COURT: Plaintiff's counsel has indicated to me certain information which places me in a position I am not going to be able to submit this case to the jury until it has been resolved to my satisfaction.

. . . .

"THE COURT: The State has come to me with some information this morning indicating that there is a problem that has developed which leads me to believe that I cannot submit the case to the jury. It puts Mr. Troia in a very compromising position.

"He cannot represent his client by giving him advice, that's about what it comes down to."

And, further, the court said: "That the information which the State has received and conveyed to

the Court has been conveyed to the defendant's counsel, that it appears that *if* this information were to be true, that it would create a conflict in the representation of the defendant by Mr. Troia and that upon the Court's own motion, I have appointed Everett Inbody to represent the interests of the defendant when this information is relayed to him which will be immediately following this conference." (Emphasis supplied.)

Thereafter, a further conference was held in the presence of Pope, Leisa Green, counsel for the State, Mr. Inbody, Mr. Troia, and the two State Patrol investigators. Counsel for the State and Mr. Inbody, representing Pope, indicated to the court their stipulation and agreement that Pope take a lie detector test solely for the purpose of assisting the court in determining how to proceed in the matter. The court then stated: "Well, the only thing that occurs to me is, I think perhaps for the record and the record is somewhat skimpy on this entire issue, I ought to recap for you the sequence of events that have occurred as I know and understand them.

"I was advised by the State of Nebraska that they had come into possession of some information which bore on the nature of this particular incident and had to do with who may or may not have committed the crime that we are here to try.

. . . .
"I don't know a great deal about the evidence they received, they told me enough so that I could make a judgment on it.

"The obvious thing that occurred to me was, even before I talked to Mr. Troia, that it placed Mr. Troia in a very peculiar position because the information bore on several individuals that he represents and so he did not say, 'I do not believe I can represent,' I said, 'You cannot represent because you cannot conscientiously advise one person of their rights when you have been representing somebody else who may

be implicated and who may not be implicated.' And at that point, I appointed Mr. Inbody who knew nothing about the case, absolutely nothing, but he is a man I consider to be a competent attorney and willing to represent your interests and that has been his sole role in this particular case.

. . . .

"Mr. Inbody has been instructed that he is to be available to you [Pope] at any time during the weekend and I think I ought to perhaps make one comment. *If we determine to go forward, we will then have determined that Mr. Troia is not compromised in this situation. If we determine not to go forward, he is then perhaps compromised in this situation and under those circumstances, you ought to be able to judge for yourselves that it is very difficult for Mr. Troia to give you advice at this particular period of time.*

"THE DEFENDANT: Yes, sir, I understand.

"THE COURT: This is an unusual situation, unusual proceeding.

"I would ask that you keep me advised wherever we might be during the weekend." (Emphasis supplied.)

The record, unfortunately, is silent as to what gave rise to a possible conflict of interest or what were the results of the weekend activities. Nevertheless, the record does disclose that the trial resumed following the weekend recess, and Pope's trial counsel, Troia, went forward with defense surrebuttal. No objection to the procedure was ever made by anyone, including Mr. Inbody. In fact, Mr. Inbody, appointed as counsel to represent the interests of Pope regarding potential problems which may have arisen from information received by the State, was relieved of that responsibility by the court prior to the resumption of trial following the weekend recess, although defense counsel indicated he preferred to have Mr. Inbody present during the remainder of the trial.

As we have already noted, we are never advised as to what facts existed which created the potential conflict, nor are we advised in what manner it was resolved, if it ever existed. We do know, however, by reason of the trial court's earlier statements, that, by proceeding with trial, we are to conclude that no conflict existed and that defense counsel was not compromised so as to be unable to continue representing Pope.

Pope now argues that the trial court erred in not declaring a mistrial or granting him a continuance on the court's own motion to allow Inbody, appointed "because of the conflict," time in which to familiarize himself with the case, investigate it, and prepare the case for Pope. However, as we have already indicated, Pope provides us with no evidence as to whether in fact there was a conflict and, if so, the nature of the conflict. Certainly the fact that the trial counsel for Pope has other clients, including some of whom testified at the trial, is not sufficient to constitute a conflict of interest requiring the trial court to declare a mistrial.

A criminal defendant's right to a trial free of a conflict of interest is required by the defendant's sixth amendment right to the effective assistance of counsel. See *Holloway v. Arkansas,* 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978). But, as noted in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), *Holloway* reaffirmed that multiple representation does not violate the sixth amendment unless it gives rise to an actual conflict of interest. In *Cuyler, supra* at 348, the U.S. Supreme Court said: "Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial. But unless the trial court fails to afford such an opportunity, a reviewing court cannot presume that the

possibility for conflict has resulted in ineffective assistance of counsel. Such a presumption would preclude multiple representation even in cases where ' "[a] common defense . . . gives strength against a common attack." ' "

The U.S. Supreme Court in *Cuyler* then set out the requirements for establishing such a conflict of interest entitling an accused to a mistrial, saying at 348-50: "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. . . .

. . . .

". . . Thus, a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. See *Holloway, supra,* at 487-491. But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. See *Glasser, supra,* at 72-75.

". . . We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance."

Following the *Cuyler* decision, the U.S. Court of Appeals for the Eighth Circuit in *Parker v. Parratt,* 662 F.2d 479, 483 (8th Cir. 1981), reviewing an alleged sixth amendment violation resulting from a claimed conflict of interest, said: "It must also be acknowledged, however, that joint representation of multiple defendants with conflicting interests by a single attorney 'is not *per se* violative of constitutional guarantees of effective assistance of counsel.' " The court then quoted from *Cuyler* and concluded by saying at 484: "Therefore, a two-step test must be

met in a case of multiple representation of conflicting interests. A claimant must establish: (1) actual conflict of interest; and (2) adverse effect on the lawyer's representation." We believe the two-step test an appropriate interpretation of *Cuyler, supra.* We are unable to find any evidence in this record to meet either the tests set out in *Parker* or the requirements announced in *Cuyler.* As we have already noted, if the record establishes anything, it is that the trial court made an investigation of the alleged claim and concluded that there was no actual conflict of interest.

In support of his claim that a conflict of interest existed, Pope provides us with an affidavit of his brother. The affidavit does nothing to establish any actual conflict of interest on the part of Pope's attorney but, rather, shows that, with full knowledge of all the facts, Pope chose to proceed with the trial. The affidavit recites in part: "Mr. Inbody informed me that an informant had come forward who could clear my brother if I would be willing to talk to my brother and pursuade [sic] him to turn State's evidence against one, Daniel R. Donovan. . . . I met with Gary and conveyed the information to him and Gary said he would not do so because if he did his wife and his children would be in deadly danger and that his minor children would be totally endangered." How it can be argued that Pope's trial counsel could have done anything to overcome Pope's choice not to turn State's evidence is impossible to understand. We believe that the record simply fails to disclose any evidence from which it can be concluded that an actual conflict of interest did exist on the part of Pope's trial counsel so as to entitle Pope to a new trial.

Pope further argues that the trial court erred in one of its instructions to the jury concerning the commission of a felony murder. We may dispose of the claim quickly. No objection to the instruction

was made by Pope, nor to any other instruction tendered. We have frequently held that the failure to object to an instruction after it has been submitted to counsel for review will preclude raising an objection on appeal. See *State v. Duis,* 207 Neb. 851, 301 N.W.2d 587 (1981).

Pope has raised several other objections which we have also examined and determined to be without merit. The judgment is affirmed.

AFFIRMED.