JERE D. DETTER, APPELLEE, V.
JEFFREY A. SCHREIBER, APPELLANT.
610 N.W.2d 13

Filed May 5, 2000. No. S-98-1362.

Thomas J. Young and Kevin R. Hopp, of Young & LaPuzza, for appellant.

Duane M. Katz, of Frazier, Wieland, Bataillon & Katz, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Jere D. Detter sued Jeffrey A. Schreiber concerning two promissory notes which were allegedly unpaid by Schreiber. Schreiber's answer and counterclaim alleged payment in full and sought payment for management services rendered by Schreiber. Prior to trial, Detter made a motion to disqualify Schreiber's attorney, which was sustained by the trial court. Schreiber appeals from the order which disqualified his counsel in the action on the promissory notes.

## SCOPE OF REVIEW

In an appeal from an order disqualifying counsel, an appellate court reviews the trial court's factual findings for clear error and ultimately makes its disqualification decision independent of the trial court's ruling. *Hawkes v. Lewis*, 255 Neb. 447, 586 N.W.2d 430 (1998).

## FACTS

In 1991, Schreiber and Detter commenced a business known as Miracle Hills Animal Hospital, P.C. (the corporation). In connection with the formation of the corporation, on February 27, 1992, Schreiber executed two promissory notes in the total principal sum of $19,000 which was payable to Detter. The articles of incorporation provided that Schreiber and Detter would each own 50 percent of the shares of the corporation and would be the only members of the board of directors. In 1996, Schreiber retained the services of Thomas J. Young to draft a shareholder agreement. These services were paid for by the corporation.

On May 12, 1998, Detter commenced an action against Schreiber on the two promissory notes. Detter's second amended petition asserted that Schreiber had made only those payments set forth in exhibit 4 attached to the petition. Detter alleged that following notice of default, Schreiber had paid $11,000 on June 3, 1998, and that there was then due and owing the sum of $10,430.45 plus interest.

Schreiber's answer and counterclaim denied that there was any balance due on the notes. Schreiber alleged that Detter was equitably estopped from recovering any and all amounts above those which had already been paid by Schreiber and that Schreiber had performed management duties on behalf of the corporation which were of value to the corporation in the amount of $70,000. Schreiber further alleged that he was entitled to set off this amount against any sum owed to Detter together with ongoing management fees in the approximate sum of $773.33 per month. Schreiber's counterclaim alleged that since the inception and commencement of the business, he had performed all the management duties of the corporation and that pursuant to an oral contract made in March 1998, Schreiber was entitled to ongoing management fees in the amount of $773.33 per month commencing April 1998.

Prior to trial, Detter moved the trial court for an order directing that Young remove himself as attorney of record for Schreiber. The motion alleged that the law firm of Young & LaPuzza had acted as attorneys for the corporation and that Young had acted as the attorney for the corporation with respect to the negotiation of the corporation's lease with Dial

Enterprises and a shareholder agreement between Detter and Schreiber.

Detter alleged that during said representation, Young discussed with Detter his personal situation, needs, and goals regarding the corporation and was acting as the attorney for the corporation, Detter, and Schreiber. He further alleged that Young would in all probability be a witness at trial. In support of said allegations, Detter attached an affidavit to his motion.

Detter's affidavit alleged that he was a 50-percent owner of the corporation and was currently serving as its president. Detter claimed that he and Schreiber were the only shareholders of the corporation and that beginning in 1995, the corporation used the services of the law firm of Young & LaPuzza. Detter stated that in 1996, the corporation used the services of Young & LaPuzza to draft a shareholder agreement. Detter claimed that during his discussions with Schreiber and Young, it was his understanding that Young represented the corporation, Detter, and Schreiber with respect to the proposed shareholder agreement. Detter also stated that during his discussions with Young regarding the shareholder agreement, he discussed his thoughts and feelings with respect to the shareholder agreement and that as a result, Young had a great deal of information regarding facts and circumstances surrounding the present litigation and had information regarding Detter's financial plans and needs. The affidavit further claimed that Schreiber had specifically advised Detter that Young was representing Detter's interests, that Detter could ask Young any questions he might have, and that Young & LaPuzza's bill would be paid from the corporate account. Detter also claimed that Young never advised him that Young was not representing his interests.

Schreiber and Young also submitted affidavits which denied that Young was Detter's attorney or that Young had received any confidential information from Detter. Schreiber's affidavit specifically alleged that James T. Blazek was the registered agent of the corporation and its corporate attorney and that Blazek, who had always acted as the attorney for the corporation, continued to do so to date. Schreiber claimed that Detter had specifically refused to allow Young or the Young & LaPuzza law firm to act as the corporate attorneys for the corporation.

Schreiber further stated that he had initiated efforts to have a proposed shareholder agreement, which was never executed, signed by Detter and himself and that he had contacted Young to prepare the initial draft of the agreement. Schreiber claimed that Young met with both Detter and Schreiber regarding the proposed shareholder agreement but that at no time during the conversations or discussions was any information relative to Detter's personal financial situation discussed or revealed. Schreiber asserted that he was not privy to Detter's personal financial situation except with regard to the operation, income, and expenses of the corporation.

In addition, Schreiber acknowledged that Detter was free to contact Young or any other attorney regarding the shareholder agreement. Schreiber stated that Young had been his personal attorney since 1990 but that he did not consult Young with regard to the corporation or the various agreements or promissory notes which were executed at the time the corporation was formed.

On November 23, 1998, the trial court found that Young had a conflict of interest and sustained Detter's motion to remove him. Schreiber appeals from the order which sustained Detter's motion to remove Young.

## ASSIGNMENTS OF ERROR

Schreiber assigns as error that the trial court erred when it admitted Detter's affidavit over objection as to conclusory statements contained therein and when it sustained Detter's motion to remove Young.

## ANALYSIS

In *Richardson v. Griffiths,* 251 Neb. 825, 560 N.W.2d 430 (1997), we concluded that if an appeal from an order of disqualification of counsel involves issues collateral to the basic controversy and if the appeal from the judgment dispositive of the entire case would not be likely to protect the client's interest, an interlocutory appeal from the order removing counsel was appropriate. We conclude that an interlocutory appeal from the trial court's order of disqualification here is appropriate and that we have jurisdiction to adjudicate the instant matter as an exception to the final order requirement for an appeal.

■ We next address the issue of disqualification. In an appeal from an order disqualifying counsel, an appellate court reviews the trial court's factual findings for clear error and ultimately makes its disqualification decision independent of the trial court's ruling. *Hawkes v. Lewis*, 255 Neb. 447, 586 N.W.2d 430 (1998). An attorney-client relationship is created when a person seeks advice or assistance from an attorney, the advice or assistance sought pertains to matters within the attorney's professional competence, and the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance. *Richardson v. Griffiths, supra.*

We have never specifically examined an attorney-client relationship in a closely held corporation setting such as the one presented in the case at bar. For purposes of our analysis, we consider the attorney-client relationship in the context of the closely held corporation in which Detter and Schreiber each owned 50 percent of the stock in the corporation and shared equally in its income and liability.

There is no dispute that Young was called upon to do some legal work for the corporation regarding a lease and a shareholder agreement. The only evidence of contact between Young and Detter was a conference on June 27, 1996, which concerned the proposed shareholder agreement and which lasted 1½ hours. The remaining contact between Young and the corporation was through Schreiber.

■ We therefore consider whether an attorney who represents a closely held corporation consisting of two shareholders can subsequently represent one of the shareholders in an action against the other shareholder, which action involves alleged agreements between the shareholders. In *Bechtold v. Gomez*, 254 Neb. 282, 288, 576 N.W.2d 185, 190 (1998), we noted that under the principles of loyalty and confidentiality set forth in the Code of Professional Responsibility, " 'an attorney, after receiving the confidence of a client, may not enter the service of others whose interests are adverse to such client's interest in the same subject matter to which the confidence relates, or in matters so closely allied thereto as to be, in effect, a part thereof.' "

In summary, it is Schreiber's position that an attorney-client relationship was never formed between Young and Detter and

that all correspondence between Young and the corporation was directed to Schreiber and the corporation only. Schreiber claims that the corporation was billed and paid for Young's legal services and that even though Young may have met with Detter in June 1996 regarding a proposed shareholder agreement, there is no competent evidence that would establish what information, if any, was provided by Detter to Young or what advice or opinions Young allegedly provided Detter.

Schreiber contends that Young's affidavit is sufficient to support his position that the trial court erred in sustaining Detter's motion to remove Young. In his affidavit, Young stated:

> I am aware of absolutely no confidential or privileged information which relates to Dr. Detter that would affect or impact the issues involved in this litigation. Dr. Detter has never revealed to me any financial plans or needs except a discussion with regard to the amount of life insurance and disability insurance which he and Dr. Schreiber carry. . . .
>
> . . . .
>
> I know of no matters of which I have personal knowledge which would cause me to be a witness at any trial of this matter.

Schreiber argues that there is no evidence that Detter personally sought advice from Young or that Young gave any advice to Detter and that, therefore, no attorney-client relationship exists between Young and Detter. Schreiber claims that it was error for the trial court to conclude that Young had a conflict of interest with Detter. Schreiber asserts that even assuming Young provided legal services to Detter or that an attorney-client relationship existed relative to the office lease or the proposed shareholder agreement, those two instances did not provide a sufficient factual basis to remove Young as Schreiber's counsel.

It is Detter's position that when Young was requested to assist the corporation with the commercial lease and to draft a shareholder agreement, Young was acting on behalf of the corporation and both of the shareholders. He relies on *In re Brownstein*, 288 Or. 83, 602 P.2d 655 (1979), a disciplinary proceeding in which a lawyer represented a small, closely held corporation; its stockholders; and a third party who was loaning money to the corporation and became a stockholder.

In *In re Brownstein, supra*, it was alleged that the lawyer had a conflict of interest in attempting to enforce the third party's rights with the corporation. The court found that for purposes of potential conflicts of interest involving small, closely held corporations, the rights of the individual stockholders who controlled the corporation and those of the corporation itself were virtually identical and inseparable. In defense of his actions, the lawyer contended that he was representing the corporation and that he had billed the corporation for his services relating to the transaction in question, not the stockholders. The court stated that where a small, closely held corporation was involved and in the absence of a clear understanding with the corporate owners that the attorney represented solely the corporation and not their individual interests, it was improper for the attorney to thereafter represent a third party whose interests were adverse to those of the stockholders and which arose out of the transaction which the attorney had handled for the corporation.

The court found that in actuality, the attorney in such a situation represented the corporate owners in their individual capacities as well as the corporation unless other arrangements were clearly made. The court noted that this was not to say that a lawyer could not put together small transactions in which the amounts involved were not large enough to justify the expense required for each interested party to have individual representation. However, when the transaction is handled, it should be handled with extreme caution and with a clear and explicit understanding concerning whom the lawyer represents. In the absence of such an understanding, the attorney should represent no party to the transaction if thereafter a dispute arises among the parties relative to it. *Id.*

Canon 5 of the Code of Professional Responsibility states: "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client." Ethical consideration 5-18 states:

> A lawyer employed or retained by a corporation or similar entity owes his or her allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity. In advising the entity, a lawyer should keep paramount its interests and the lawyer's professional judgment should not be influenced

by the personal desires of any person or organization. Occasionally a lawyer for an entity is requested by a stockholder, director, officer, employee, representative, or other person connected with the entity to represent him or her in an individual capacity; in such case the lawyer may serve the individual only if the lawyer is convinced that differing interests are not present.

Ethical consideration 5-14 states:

Maintaining the independence of professional judgment required of a lawyer precludes the lawyer's acceptance or continuation of employment that will adversely affect his or her judgment on behalf of or dilute loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.

We are required to review the trial court's factual findings for clear error and make our determination regarding disqualification independent of the trial court's ruling. See *Hawkes v. Lewis*, 255 Neb. 447, 586 N.W.2d 430 (1998). Detter and Schreiber agreed to form a closely held corporation and to essentially share equally in the income and liability of the business. Young was called upon to do the legal work for the corporation regarding a lease and a shareholder agreement. The shareholder agreement appears to be an agreement to govern and restrict the disposition of the shares of the corporation. It sets forth procedures for the annual evaluation of the corporation, restrictions on buying and selling shares, and the manner in which the stock would be purchased upon the death or disability of a shareholder. Preparation of this type of agreement would require Young to work with both Detter and Schreiber and to ascertain their financial and personal interests in order to determine what each wanted in the agreement. Thus, it could reasonably be inferred that Young had knowledge of the two promissory notes executed by the parties and of the management duties which are the subject of the counterclaim. Furthermore, although the evidence establishes that Young and Detter may have met only one time, Detter believed that Young was representing him at that time. Based on the facts of this case, the trial court found that Young

had a conflict of interest and should be removed as Schreiber's attorney.

In disqualifying Young as counsel for Schreiber, the trial court had to factually determine that his representation constituted a conflict of interest. We find no clear error in this determination, and we conclude that the trial court correctly determined that Young should be disqualified as Schreiber's attorney.

Schreiber also assigns as error that the trial court erred in admitting Detter's affidavit over objection as to conclusory statements contained therein. We find no merit to this assignment.

## CONCLUSION

For the reasons set forth herein, we affirm the judgment of the trial court.

AFFIRMED.