STATE OF NEBRASKA, APPELLEE, V.
MICHAEL L. EHLERS, APPELLANT.
631 N.W.2d 471

Filed July 20, 2001.   No. S-00-216.

Michael N. Schirber, of Schirber Law Offices, P.C., for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

Hendry, C.J., Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

Connolly, J.

Michael L. Ehlers appeals from an order of the Sarpy County District Court sustaining the State of Nebraska's motion to disqualify Michael N. Schirber, his privately retained counsel. We determine that because a criminal defendant has a Sixth Amendment interest in representation by the counsel of his or her choice, irrebuttable presumptions that we have applied in favor of disqualification in civil cases cannot be applied in a criminal case. Instead, when making disqualification decisions in a criminal case involving privately retained counsel, a court must balance the defendant's Sixth Amendment right to be represented by counsel of choice against the defendant's right to a defense conducted by an attorney who is free from conflicts of interest. After considering Ehlers' Sixth Amendment interests, we conclude that the district court erred in disqualifying his privately retained counsel, and we reverse, and remand to allow Ehlers to make a knowing and voluntary waiver of his Sixth Amendment right to representation by counsel who is free from conflicts of interest.

## I. BACKGROUND

On February 5, 1999, Regina M. Ehlers (Regina) filed a petition for dissolution of her marriage to Ehlers in the Sarpy County District Court. The parties had one minor child affected by the dissolution proceedings. During the course of the dissolution proceedings, Regina sought a restraining order against Ehlers. Regina alleged that Ehlers had threatened to kill the parties' child and had choked the child on two separate occasions.

Regina was initially represented by private counsel in the dissolution action but was later represented by Robert A. Sanford at the Legal Aid Society of Omaha, Nebraska. Jeffrey A. Wagner was employed by the Legal Aid Society and supervised Sanford until October 15, 1999, at which time he became employed by Schirber. Schirber was later disqualified from representing Ehlers in the dissolution action.

On June 11, 1999, Ehlers was charged by amended information with attempted first degree sexual assault, two counts of child abuse, two counts of terroristic threats, and two counts of third degree sexual assault. The victim described in the amended information is the child of Regina and Ehlers, and both Regina and the victim are listed as witnesses.

Ehlers privately retained Schirber to represent him in the criminal action. On January 4, 2000, the State moved to disqualify Schirber from representing Ehlers. The State alleged that Regina was a material witness in its case in chief against Ehlers and that the matters at issue in the dissolution action were similar to those in the criminal case against Ehlers. The State further alleged that Wagner's association with Schirber created an appearance of impropriety that would disqualify Schirber from the criminal case.

The State entered into evidence an affidavit from Sanford. In the affidavit, Sanford averred that he had represented Regina in the dissolution action and had sought a protection order against Ehlers on her behalf. Sanford averred that Wagner had worked as his immediate supervisor and that Wagner was involved in deciding to accept Regina's case. Sanford further averred that he discussed with Wagner the relationship between the dissolution action and the criminal charges against Ehlers. Wagner, however, testified at the disqualification hearing that he did not know Regina, had never met her, and did not have any personal knowledge of her domestic, financial, or legal affairs. Wagner also testified that he never conveyed any confidences about Regina to Schirber. Wagner admitted it was possible that he discussed the merits of Regina's case with Sanford, but testified that he had no recollection of doing so. Regina did not testify at the disqualification hearing.

Relying in part on our decisions in previous civil cases, the district court concluded that the criminal action included issues which were material to the dissolution action. The court further determined that Wagner was presumed to have received confidences about Regina and was presumed to have shared those confidences with Schirber. The court then disqualified Schirber from representing Ehlers in the criminal case. Ehlers appeals.

## II. ASSIGNMENTS OF ERROR

Ehlers assigns that the district court erred in granting the State's motion to disqualify his privately retained counsel and in denying his motion for attorney fees.

## III. STANDARD OF REVIEW

■ In an appeal from an order disqualifying counsel, an appellate court reviews the trial court's factual findings for clear error and ultimately makes its disqualification decision independent of the trial court's ruling. *Mutual Group U.S. v. Higgins,* 259 Neb. 616, 611 N.W.2d 404 (2000).

■ A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *State v. Lauck,* 261 Neb. 145, 621 N.W.2d 515 (2001).

## IV. ANALYSIS

### 1. JURISDICTION

■ We first consider whether the trial court's order disqualifying Ehlers' privately retained counsel is a final, appealable order. It is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *State v. Lauck, supra.*

■ We have not previously considered whether an order disqualifying privately retained counsel in a criminal case is a final, appealable order. We have held that an order disqualifying court-appointed counsel in a criminal case is not a final, appealable order. See *State v. Schlund,* 249 Neb. 173, 542 N.W.2d 421 (1996). *State v. Schlund,* however, is applicable only in a criminal case involving court-appointed counsel. When a defendant in a criminal case chooses to privately retain counsel, he or she has a constitutional right to representation by the counsel of his or her choice. *Wheat v. United States,* 486 U.S. 153, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988).

■ In the civil context, we have held that an order disqualifying privately retained counsel generally is not a final order. See *Richardson v. Griffiths,* 251 Neb. 825, 560 N.W.2d 430 (1997). But, we have also held in civil cases that if an appeal from an order of disqualification involves issues collateral to the

basic controversy and if an appeal from a judgment dispositive of the entire case would not be likely to protect the client's interests, interlocutory review is appropriate. *Id.* See, *Mutual Group U.S. v. Higgins, supra*; *Detter v. Schreiber*, 259 Neb. 381, 610 N.W.2d 13 (2000); *Hawkes v. Lewis*, 255 Neb. 447, 586 N.W.2d 430 (1998). We conclude that this rule is applicable to the disqualification of privately retained counsel in a criminal case.

In this case, delaying the appeal until after a dispositive judgment on the criminal charges would not protect Ehlers' constitutional interest in the counsel of his own choosing. We conclude that interlocutory review is appropriate and that we have jurisdiction over this appeal.

## 2. STANDING

We next address whether the State has standing to seek disqualification. In this case, Regina, the former client, did not seek Schirber's disqualification. Rather, the State sought the disqualification on the basis that Regina was an important witness in their case against Ehlers.

Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *In re Estate of Emery*, 258 Neb. 789, 606 N.W.2d 750 (2000); *In re Interest of Alycia P.*, 258 Neb. 258, 603 N.W.2d 7 (1999). See *Mutual Group U.S. v. Higgins, supra*. In order to have standing, a litigant must assert the litigant's own legal rights and interests and cannot rest his or her claim on the legal rights or interests of third parties. *Miller v. City of Omaha*, 260 Neb. 507, 618 N.W.2d 628 (2000).

As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification. *Hawkes v. Lewis, supra*. We have acknowledged, however, cases from other jurisdictions which hold that disqualification may be sought by a party who is not a former client under certain circumstances. See *id*. In the criminal context, the Second Circuit Court of Appeals has held that the government has a sufficient interest in preserving the integrity of a criminal proceeding to have standing to seek disqualification of defense counsel when the counsel has previously represented a proposed prosecution witness. *United States v. Cunningham*, 672

F.2d 1064 (2d Cir. 1982). We agree. The State has standing to seek disqualification of Ehlers' attorney in this case.

### 3. DISQUALIFICATION

In disqualifying Schirber, the district court cited to our decisions in civil cases, under which we have applied certain presumptions in favor of disqualification. See, *Hawkes v. Lewis, supra*; *Bechtold v. Gomez*, 254 Neb. 282, 576 N.W.2d 185 (1998); *State ex rel. Wal-Mart v. Kortum*, 251 Neb. 805, 559 N.W.2d 496 (1997); *State ex rel. FirsTier Bank v. Mullen*, 248 Neb. 384, 534 N.W.2d 575 (1995). But Ehlers argues that because he has a Sixth Amendment right to counsel of his choice, the presumptions we have applied in civil cases cannot be equally applied in a criminal case.

### (a) Overview of Sixth Amendment Principles

The Sixth Amendment to the U.S. Constitution provides that a criminal defendant has a right to have the assistance of counsel for his or her defense. The U.S. Supreme Court has long recognized that an essential part of that right is the defendant's ability to select the counsel of his or her choice. See, *Wheat v. United States*, 486 U.S. 153, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988); *Powell v. Alabama*, 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 2d 158 (1932); *U.S. v. Ross*, 33 F.3d 1507 (11th Cir. 1994). The Eighth Circuit Court of Appeals has stated that " '[i]n general defendants are free to employ counsel of their own choice and the courts are afforded little leeway in interfering with that choice.' " *United States v. Agosto*, 675 F.2d 965, 969 (8th Cir. 1982), *abrogated on other grounds, Flanagan v. United States*, 465 U.S. 259, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984). See *U.S. v. Ross, supra*. Accordingly, because disqualification of a criminal defendant's chosen counsel raises problems of a constitutional dimension, it is a harsh remedy that should be invoked infrequently. *U.S. v. Gotti*, 9 F. Supp. 2d 320 (S.D.N.Y. 1998), citing *U.S. v. Locascio*, 6 F.3d 924 (2d Cir. 1993).

The U.S. Supreme Court has held that the Sixth Amendment recognizes a presumption in favor of the defendant's chosen counsel. *Wheat v. United States, supra*. Among reasons for this presumption are (1) a historic respect for the

defendant's autonomy in crafting a defense, (2) the strategic importance of choice in ensuring vigorous advocacy, and (3) practical considerations of cost to the defendant and the judicial system if counsel of choice were wrongly denied. See Roxanne Malaspina, *Resolving the Conflict of the Unsworn Witness: A Framework for Disqualifying House Counsel Under the Advocate-Witness Rule*, 67 N.Y.U. L. Rev. 1073 (1992) (explaining these factors). See, also, Linda Ann Winslow, *Federal Courts and Attorney Disqualification Motions: A Realistic Approach to Conflicts of Interest*, 62 Wash. L. Rev. 863 (1987) (discussing general harms created by disqualification). But the guarantee of the Sixth Amendment also encompasses the right to assistance of counsel unhindered by a conflict of interest. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). See *U.S. v. Ross, supra.*

A defendant can waive his or her right to assistance of counsel unhindered by a conflict of interest, provided that the waiver is knowing and intelligent. Indeed, a defendant may waive his or her right to be represented by counsel at all. *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). But a court is not required to accept a defendant's waiver in all circumstances. Therefore, the right to counsel of choice is not absolute. *Wheat v. United States, supra.* A trial court must recognize a presumption in favor of a defendant's counsel of choice, but that presumption may be overcome by a demonstration of actual conflict or a showing of a serious potential for conflict. *Wheat v. United States, supra*; *U.S. v. Ross, supra.* Disqualification in such cases is necessary because when a defendant is represented by an attorney who has an actual or potentially serious conflict, the defendant may be deprived of effective assistance of counsel. See *id.*

So, when determining whether or not to disqualify a defense counsel, the court must balance two Sixth Amendment rights: (1) the defendant's right to be represented by counsel of choice and (2) his or her right to a defense conducted by an attorney who is free of conflicts of interest. *U.S. v. Ross, supra.* See *Wheat v. United States*, 486 U.S. 153, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988). The U.S. Supreme Court has also recognized an independent interest of the courts in ensuring that crim-

inal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. *Wheat v. United States, supra.*

In this case, the concern is that the attorney-client relationship with Regina gave rise to continuing obligations of loyalty and confidentiality and that if the confidences were kept, the representation of Ehlers might prove to be ineffective due to the inability of Schirber to conduct a thorough cross-examination. See, *U.S. v. Gotti, supra*; Bruce A. Green, *"Through a Glass, Darkly": How the Court Sees Motions to Disqualify Criminal Defense Lawyers*, 89 Colum. L. Rev. 1201 (1989). The goal is to discover whether a defense lawyer has divided loyalties that prevent him or her from effectively representing the defendant. *U.S. v. Ross*, 33 F.3d 1507 (11th Cir. 1994). If the conflict could cause the defense attorney to improperly use privileged communications in cross-examination, then disqualification is appropriate. *Id.* Disqualification is also appropriate if the conflict could deter the defense attorney from intense probing of the witness on cross-examination to protect privileged communications with the former client or to advance the attorney's own personal interests. *Id.*

### (b) Burden of Proof

Courts are divided on the question of who should bear the burden of proof when a disqualification motion is made by the government in a criminal case. Some jurisdictions state, often in connection with an abuse of discretion standard of review, that any doubt is to be resolved in favor of disqualification. See, e.g., *United States v. Agosto*, 675 F.2d 965 (8th Cir. 1982), *abrogated on other grounds, Flanagan v. United States*, 465 U.S. 259, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984).

Others, however, take a contrary position, holding that when seeking disqualification, the government bears the burden of overcoming the presumption in favor of a defendant's choice of counsel by showing that the defense attorney has an actual or potentially serious conflict. *Hanna v. State*, 714 N.E.2d 1162 (Ind. App. 1999); *United States v. Grass*, Nos. Crim.A. 00-120-01, Crim.A. 00-120-02, 2000 WL 1728509 (E.D. Pa. Nov. 21, 2000).

At least one court, while stating that doubts are to be resolved in favor of disqualification, has also stated that the government

bears a " ' "heavy burden" ' " and must meet a " ' "high standard of proof." ' " *In re Cendant Corp. Securities Litigation*, 124 F. Supp. 2d 235, 249 (D.N.J. 2000). In *United States v. Washington*, 797 F.2d 1461, 1465 (9th Cir. 1986), the Ninth Circuit Court of Appeals held that "[i]n seeking to disqualify a defendant's chosen counsel, the government bears a heavy burden of establishing that concerns about the integrity of the judicial process justify the disqualification."

Certainly, a trial court has an independent duty to explore any conflicts of interest that may arise regardless of whether such conflicts are raised by the parties. See *Glasser v. United States*, 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 2d 680 (1942) (superseded on other grounds by Fed. R. Evid. 104(a) as stated in *Bourjaily v. United States*, 483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987)). But "the Sixth Amendment right to counsel of choice reflects a constitutional protection of the defendant's free choice independent of the concern for the objective fairness of the proceedings." *Hanna v. State*, 714 N.E.2d at 1165, citing *United States v. Diozzi*, 807 F.2d 10 (1st Cir. 1986), and *Flanagan v. United States*, 465 U.S. 259, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984). When this is coupled with the presumption in favor of the defendant's choice in counsel, the logical conclusion is to place the burden of proof on the government. Further, when the State makes a motion to disqualify, under standard principles regarding the allocation of the burden of proof, the State must bear that burden. See *Hanna v. State*, 714 N.E.2d at 1165 ("[w]here it is the government which moves to disqualify defense counsel, the burden is on the government to show that any infringement on the defendant's choice of counsel is justified"). Accordingly, we hold that when the State brings a motion to disqualify a criminal defendant's privately retained counsel, the State bears the burden of proving that disqualification is necessary.

### (c) Application to Ehlers' Case

The district court failed to consider the implication of Ehlers' Sixth Amendment right to counsel of his choice. Instead, the district court applied rules we have used in civil cases to determine that Schirber should be disqualified. The district court first

referred to the principle that an attorney, after receiving the confidence of a client, may not enter the service of others whose interests are adverse to such client's interest in the same subject matter to which the confidence relates, or in matters so closely allied thereto as to be, in effect, a part thereof. See, *Hawkes v. Lewis*, 255 Neb. 447, 586 N.W.2d 430 (1998); *Bechtold v. Gomez*, 254 Neb. 282, 576 N.W.2d 185 (1998); *State ex rel. Wal-Mart v. Kortum*, 251 Neb. 805, 559 N.W.2d 496 (1997).

The district court next applied the principle from civil cases that confidences and secrets possessed by an attorney are presumptively possessed by other members of the attorney's firm. See, e.g., *State ex rel. FirsTier Bank v. Mullen*, 248 Neb. 384, 534 N.W.2d 575 (1995). Under this presumption, an attorney who leaves a firm is presumed to have acquired client confidences during his or her tenure at the firm. It is then further presumed that the attorney has shared or will share those client confidences with members of any subsequent firm with which the attorney becomes employed. See *Bechtold v. Gomez, supra.* In the civil context, we have also stated that when an attorney who was intimately involved with the particular litigation, and who has obtained confidential information pertinent to that litigation, terminates the relationship and becomes associated with a firm which is representing an adverse party in the same litigation, there arises an irrebuttable presumption of shared confidences, and the entire firm must be disqualified from further representation. *State ex rel. FirsTier Bank v. Buckley*, 244 Neb. 36, 503 N.W.2d 838 (1993).

But in a criminal case, it has been held that it is error for a trial court to apply an irrebuttable presumption that former clients imparted confidences to the defendant's attorney when the former clients testified that no confidences had been shared and the defense attorney testified that he received no confidential information. *United States v. Agosto*, 675 F.2d 965 (8th Cir. 1982), *abrogated on other grounds, Flanagan v. United States*, 465 U.S. 259, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984). See, also, *Perillo v. Johnson*, 205 F.3d 775 (5th Cir. 2000) (refusing to apply irrebuttable presumptions in criminal case). See, generally, *United States v. O'Malley*, 786 F.2d 786 (7th Cir. 1986) (refusing to apply holdings from civil cases in criminal case).

The view that the presumptions in favor of disqualification that we apply in civil cases are inapplicable in a criminal case is illustrated by our court's decision in *State v. Marchese*, 245 Neb. 975, 515 N.W.2d 670 (1994).

In *State v. Marchese, supra*, the defendant was charged with arson after he was alleged to have deliberately set two of his wife's dresses on fire, which caused damage to a building. At the time that Marchese entered his plea of guilty, his attorney was also representing the wife on a charge of aiding and abetting Marchese to resist arrest on the arson charge, as well as representing her in several other criminal matters and in an action to dissolve her marriage to Marchese. Marchese sought postconviction relief, contending that due to his attorney's conflict of interest, his plea of guilty was the result of ineffective assistance of counsel. The district court denied an evidentiary hearing. On appeal, we made note of the Sixth Amendment concerns at issue. Recognizing the possibility that an actual conflict of interest may have occurred, we reversed for an evidentiary hearing. In doing so, however, we stated:

> [T]he fact of multiple representation alone is not a per se violation of the Sixth Amendment. . . . *Nor is the fact that an attorney has other clients, including one who would be a State witness and testify at trial, sufficient in and of itself to constitute a conflict of interest.* . . . Similarly, the mere possibility of a lawyer's conflict of interest is insufficient to impugn a criminal conviction.

(Citations omitted.) (Emphasis supplied.) *Id.* at 978, 515 N.W.2d at 673. See, also, *State v. Narcisse*, 260 Neb. 55, 615 N.W.2d 110 (2000); *State v. Pope*, 211 Neb. 425, 318 N.W.2d 883 (1982).

*State v. Marchese, supra*, was decided after this court instituted the use of irrebuttable presumptions in civil cases. Further, if irrebuttable presumptions in favor of disqualification were applied in criminal cases, cases such as *Marchese* would require automatic reversal due to ineffective assistance of counsel. To avoid such cases, trial courts would have little choice but to disqualify a defendant's chosen counsel whenever there is a perceived conflict. To do so is in direct contradiction to a criminal defendant's constitutional right to counsel of choice and the presumption in favor of that choice. See, *United States v.*

*Cunningham*, 672 F.2d 1064 (2d Cir. 1982) (distinguishing between civil and criminal cases); *United States v. Armedo-Sarmiento*, 524 F.2d 591 (2d Cir. 1975) (stating that because civil cases do not involve crucial factor of criminal defendant's Sixth Amendment rights, they are not controlling).

By applying the presumptions we have applied in civil cases equally to a criminal case, the district court ignored the presumptions in favor of a criminal defendant's choice of counsel. The problem with such an approach is that the application of presumptions in favor of disqualification in a criminal case, particularly if those presumptions are irrebuttable, acts to deprive the defendant of a constitutional right. Thus, the rules we have applied in civil cases cannot be applied in the same manner in a criminal case.

We further note that in this case, the concern of a conflict is focused on Regina who, as a witness, is not a party to the action, and who was never personally represented by either Schirber or Wagner. Although a witness may have some personal interest in the outcome of a criminal trial, he or she is not a party to the action and does not have standing to intervene as a party to the action. For example, Neb. Const. art. I, § 28, provides that a crime victim has the right to be informed of criminal court proceedings and a right to be present at trial absent a sequestration order by the trial court. It also provides, however, that it does not afford a victim standing to participate as a party. Accordingly, Schirber's representation of Ehlers is not directly adverse to Regina's interests. Instead, it is the State's interests that are directly at issue.

We conclude that the district court erred when it applied presumptions applicable to civil cases to Ehlers' criminal proceedings. Rather, under *Wheat v. United States*, 486 U.S. 153, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988), a balance must be performed between Ehlers' Sixth Amendment right to counsel of choice and his right to representation free from conflicts.

### (d) Balancing

We next apply the test required by *Wheat v. United States, supra*, which includes a rebuttable presumption in favor of the defendant's counsel of choice. We first conclude that this case

260

does not involve an actual conflict of interest. This is not a case involving concurrent representation where the defense attorney directly represented the government witness. Rather, it is a case of successive representation. Regina was at one time represented by Sanford, an attorney at an agency. Wagner, another attorney employed by that agency at the time who was Sanford's supervisor, later switched employment and now works at the firm of Ehlers' attorney, Schirber. No direct or concurrent representation is involved. Thus, there is no actual conflict.

We further conclude that a potentially serious conflict is not present. The U.S. Supreme Court has stated that the seriousness of any potential conflict depends on its likelihood and dimensions. *Wheat v. United States, supra.* When weighing the interests at stake, courts generally give substantial weight to defense counsel's representations regarding conflicts of interest. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); *United States v. Agosto,* 675 F.2d 965 (8th Cir. 1982), *abrogated on other grounds, Flanagan v. United States,* 465 U.S. 259, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984). When the evidence presented shows that no confidences were imparted to the defense attorney that created an actual or potentially serious conflict affecting cross-examination, deference should be given to the defendant's choice when that choice is made knowingly and intelligently.

An affidavit was provided by Sanford stating that he discussed with Wagner the relationship between Regina's dissolution action and the criminal case against Ehlers. Wagner testified that he does not know Regina, has never met her, and does not have any personal knowledge as to her domestic, financial, or legal affairs. Standing alone, this conflicting evidence could be cause for concern. But, Wagner then testified that he imparted no information to Schirber. The State did not present evidence to contradict that testimony. Consequently, even if it were assumed that Wagner was privy to confidential information, there was no evidence provided by the State that Schirber had received that information or that he would receive that information in the future. Further, no testimony was provided by Regina. Thus, there is no evidence in this case that Ehlers' attorney is privy to confidential information that will compromise

any ethical duty to Regina or that will deprive Ehlers of effective assistance of counsel.

Nor is there any concern for protecting the judicial system's interest in safeguarding the fairness and accuracy of the criminal proceedings. When the evidence shows that an actual conflict does not exist and that any potential conflict is not serious but is, instead, highly remote, there is no concern that the interests of the judicial system will be compromised. Rather, under such circumstances, the disqualification of a defendant's counsel of choice would raise concerns of compromising the judicial system by denying the defendant a constitutional right and forcing him or her to start anew with counsel who will be less familiar with the case and may have less time to prepare for trial. See, generally, Bruce A. Green, *"Through a Glass, Darkly": How the Court Sees Motions to Disqualify Criminal Defense Lawyers*, 89 Colum. L. Rev. 1201 (1989).

We conclude that Ehlers' right to counsel of choice outweighs his right to counsel free from conflicts. Thus, the district court erred in disqualifying Schirber.

### (e) Waiver

Although we conclude that no actual or potentially serious conflict is at issue, the remote possibility of a conflict is still present. Therefore, because of the competing Sixth Amendment rights at issue, Ehlers may proceed with his counsel of choice, but only if he provides a knowing and intelligent waiver of his right to counsel free from conflicts of interest. By waiving the constitutional right to representation free of conflicts of interest, a defendant is doing so in favor of another constitutional right, the right to counsel of his or her choice, and he or she must be fully informed of any potential consequences of that choice, including the likely foreclosure of a later action for postconviction relief due to the conflict. See, generally, *Glasser v. United States*, 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 2d 680 (1942) (superseded on other grounds by Fed. R. Evid. 104(a) as stated in *Bourjaily v. United States*, 483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987)). A valid waiver not only protects the defendant, but it also acts to protect the integrity of the process and further alleviates any collateral concerns regarding the necessity to protect that process.

Because the record does not show that Ehlers made a knowing and intelligent waiver of his right to counsel free from conflicts, we reverse the decision of the district court and remand the cause to allow him the opportunity to make such a waiver. See *United States v. Armedo-Sarmiento*, 524 F.2d 591 (2d Cir. 1975) (remanding to allow for waiver). Ehlers must be carefully and fully informed, both by his attorney and the court, of the competing Sixth Amendment interests at stake and the consequences of a waiver of his right to counsel free from conflicts. See *United States v. DeLuna*, 584 F. Supp. 139 (W.D. Mo. 1984), citing *United States v. Lawriw*, 568 F.2d 98 (8th Cir. 1977) (describing procedure to elicit acceptable waiver). If such a waiver is given, Ehlers may proceed with Schirber as his attorney of choice. In the absence of such a waiver, disqualification will be necessary.

### 4. ATTORNEY FEES

Finally, Ehlers contends that the State's motion to disqualify was a frivolous pleading and seeks attorney fees. This case involves serious Sixth Amendment concerns. The State has a legitimate reason to seek to ensure that Ehlers is not represented by ineffective assistance of counsel in order to ensure the finality of any potential conviction. We conclude that the motion was not frivolous and deny the request for attorney fees.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

MILLER-LERMAN, J., concurring.

I concur in this criminal case. I write only to state that I do not read the majority opinion as necessarily endorsing an irrebuttable presumption of multiple imputation of shared confidences in civil cases which might be said to exist in opinions such as *Bechtold v. Gomez*, 254 Neb. 282, 576 N.W.2d 185 (1998), *State ex rel. FirsTier Bank v. Mullen*, 248 Neb. 384, 534 N.W.2d 575 (1995), and *State ex rel. FirsTier Bank v. Buckley*, 244 Neb. 36, 503 N.W.2d 838 (1993).