STATE OF NEBRASKA, APPELLEE, V.
THOMAS J. KAWA, APPELLANT.

STATE OF NEBRASKA, APPELLEE, V.
SEAN A. FLANAGAN, APPELLANT.

708 N.W.2d 662

Filed January 27, 2006.   Nos. S-05-768, S-05-769.

Matthew T. Knoblauch and Stephen L. Smith for appellants.

Jon Bruning, Attorney General, and George R. Love for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

The question presented in this appeal is whether an actual and serious conflict of interest is presented in a criminal proceeding when the prosecution offers a favorable plea agreement to one codefendant, conditioned on testimony against another codefendant who is represented by the same attorney. Because there is a conflict of interest in this case requiring disqualification of defense counsel, we affirm the disqualification order entered by the district court.

## BACKGROUND

The appellants, Thomas J. Kawa and Sean A. Flanagan, were each charged by information with two counts of conspiracy to commit theft by deception. Kawa was the president of Money Makers, Inc., and Flanagan was Money Makers' office manager. In the information, the State generally alleged that Money Makers had, through the actions of Kawa and Flanagan, engaged in a scheme to repackage and relabel damaged or inoperable automobile parts and fraudulently return those parts to an automobile manufacturer in exchange for the cash value of new parts. The cases against Kawa and Flanagan were joined for trial, and the defendants were both represented by Stephen Smith, who was later joined as defense counsel by Matthew Knoblauch.

The State filed a motion to disqualify defense counsel, based on the State's desire to discuss a plea agreement with Flanagan. The State contended that its indication of an interest in discussing

a plea agreement gave rise to a conflict of interest between the defendants that precluded common representation. The court examined the defendants and overruled the motion, finding that the defendants had freely, knowingly, intelligently, and voluntarily waived any conflict of interest.

The State then officially proffered a "Conditional Non-Prosecution Agreement" to Flanagan, pursuant to which all charges against Flanagan would be dismissed in exchange for his truthful testimony against Kawa. The State filed another motion to disqualify counsel, on the basis of this alleged actual conflict of interest. The court found that an actual conflict of interest existed and that despite the defendants' waiver, it was necessary to disqualify defense counsel from further representation of the defendants. From those orders, Kawa and Flanagan appeal.

## ASSIGNMENT OF ERROR

Kawa and Flanagan assign, as restated, that the trial court erred in entering orders to disqualify counsel from representing multiple defendants based upon a proffer of a conditional plea agreement when the defendants had knowingly, intelligently, and voluntarily waived any conflict of interest.

## STANDARD OF REVIEW

In an appeal from an order disqualifying counsel, an appellate court reviews the trial court's factual findings for clear error and ultimately makes its disqualification decision independent of the trial court's ruling. *State v. Ehlers*, 262 Neb. 247, 631 N.W.2d 471 (2001).

## ANALYSIS

We note, before proceeding to the merits of this appeal, that we have jurisdiction to consider an order disqualifying privately retained counsel in a criminal case and that the State has standing to seek such disqualification. See *id.*

We recently considered the principles applicable to the disqualification of privately retained counsel in a criminal case in *Ehlers, supra.* In that case, we stated that the Sixth Amendment to the U.S. Constitution provides that a criminal defendant has a right to have the assistance of counsel for his or her defense. An essential part of that right is the defendant's ability to select the

counsel of his or her choice. *Ehlers, supra.* " ' "[I]n general defendants are free to employ counsel of their own choice and the courts are afforded little leeway in interfering with that choice." ' " *Id.* at 253, 631 N.W.2d at 479, quoting *United States v. Agosto*, 675 F.2d 965 (8th Cir. 1982), *abrogated on other grounds, Flanagan v. United States*, 465 U.S. 259, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984). Accordingly, because disqualification of a criminal defendant's chosen counsel raises problems of a constitutional dimension, it is a harsh remedy that should be invoked infrequently. *Id.*

The Sixth Amendment recognizes a presumption in favor of the defendant's chosen counsel. *Ehlers, supra*, citing *Wheat v. United States*, 486 U.S. 153, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988). Among the reasons for this presumption are (1) a historic respect for the defendant's autonomy in crafting a defense, (2) the strategic importance of choice in ensuring vigorous advocacy, and (3) practical considerations of cost to the defendant and the judicial system if counsel of choice were wrongly denied. But the guarantee of the Sixth Amendment also encompasses the right to assistance of counsel unhindered by a conflict of interest. *Ehlers, supra.*

A defendant can waive his or her right to assistance of counsel unhindered by a conflict of interest, provided that the waiver is knowing and intelligent. But a court is not required to accept a defendant's waiver in all circumstances. The right to counsel of choice is not absolute. A trial court must recognize a presumption in favor of a defendant's counsel of choice, but that presumption may be overcome by a demonstration of actual conflict or a showing of a serious potential for conflict. Disqualification in such cases is necessary because when a defendant is represented by an attorney who has an actual or potentially serious conflict, the defendant may be deprived of effective assistance of counsel. *Id.*

When determining whether or not to disqualify a defense counsel, the court must balance two Sixth Amendment rights: (1) the defendant's right to be represented by counsel of choice and (2) his or her right to a defense conducted by an attorney who is free of conflicts of interest. The U.S. Supreme Court has also recognized an independent interest of the courts

in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. *State v. Ehlers*, 262 Neb. 247, 631 N.W.2d 471 (2001), citing *Wheat, supra*. But when the State brings a motion to disqualify a criminal defendant's privately retained counsel, the State bears the burden of proving that disqualification is necessary. *Id.*

In *Ehlers*, defense counsel was alleged to have a conflict of interest based upon the prior representation of the defendant's ex-wife, in a dissolution action, by an associate of a lawyer subsequently employed by defense counsel. Under those circumstances, we determined that no actual conflict of interest existed. The ex-wife had merely been represented by a Legal Aid Society attorney whose supervisor later left the Legal Aid Society and was employed by defense counsel. Neither defense counsel nor his associate ever actually represented the ex-wife. Since defense counsel had not been imparted with any confidential information regarding the ex-wife, there was no actual or potentially serious conflict that compromised any ethical duty to the ex-wife or deprived the defendant of effective assistance of counsel. Therefore, we reversed the trial court's decision to disqualify counsel. But because there was a remote possibility of a conflict, we remanded the cause with directions to offer the defendant the opportunity to waive any such conflict. *Id.*

The evidence of an actual conflict of interest in the instant case is far more compelling, and based upon that evidence, the district court concluded that an actual conflict of interest does exist. It has generally been found to be an actual and serious conflict of interest when a lawyer represents two codefendants, one of whom pleads guilty pursuant to an agreement to testify against the other. See, e.g., *U.S. v. Shwayder*, 312 F.3d 1109 (9th Cir. 2002), *amended on denial of rehearing* 320 F.3d 889 (9th Cir. 2003); *U.S. v. Cook*, 45 F.3d 388 (10th Cir. 1995); *United States v. Alvarez*, 580 F.2d 1251 (5th Cir. 1978); *Littlejohn v. State*, 593 So. 2d 20 (Miss. 1992). See, also, *U.S. v. Hughes*, 817 F.2d 268 (5th Cir. 1987). Cf., *Lipson v. U.S.*, 233 F.3d 942 (7th Cir. 2000); *Edens v. Hannigan*, 87 F.3d 1109 (10th Cir. 1996); *Ellis v. State*, 272 Ga. 763, 534 S.E.2d 414 (2000)

(finding reversible error where convicted defendants alleged that commonly retained defense counsel had been ineffective in failing to pursue plea agreements that would have required testimony against codefendant).

Here, defense counsel would be precluded, by their duties to Kawa, from objectively advising Flanagan on the consequences of accepting or rejecting the plea agreement. See, *Lipson, supra*; *Edens, supra*; *Ellis, supra*. To complete a plea agreement on Flanagan's behalf, resulting in the dismissal of all charges, would necessarily require Flanagan to offer testimony prejudicial to Kawa. Defense counsels' duty to Flanagan would require the conclusion of a plea agreement so obviously favorable to Flanagan, but that advantage would come at the expense of defense counsels' other client, Kawa. Counsels' responsibility to Kawa would then require an effort to impeach Flanagan's testimony—perhaps even attempting to undermine the very plea agreement that counsel had negotiated on Flanagan's behalf. Compare, e.g., *Shwayder, supra*; *Alvarez, supra*; *Littlejohn, supra*. Under these circumstances, we conclude that the district court did not clearly err in finding that the State's proffered plea agreement gave rise to an actual conflict of interest for defense counsel.

Kawa and Flanagan contend that for the State to prove an actual conflict of interest, there must be some evidence of the substance of the testimony that would be offered in exchange for the dismissal of charges. But the record clearly indicates that the State's proffer was specifically premised on Flanagan's testimony regarding Kawa. Regardless of the substance of that testimony, it is evident that the successful conclusion of a plea agreement for Flanagan will require that Flanagan offer evidence prejudicial to Kawa. This unavoidable prejudice to either one defendant or the other places defense counsel in a conflict between the interests of the two.

Kawa and Flanagan also contend that they validly waived any conflict of interest. But as noted above, a court is not required to accept a defendant's waiver in all circumstances. The presumption in favor of a defendant's counsel of choice may be overcome by a demonstration of actual conflict, and the trial court's conclusion that an actual conflict is present in this case is supported by the evidence and not clearly wrong. Disqualification is

necessary in this case, to protect both the defendants' constitutional rights and the court's independent interest in the fairness of the proceedings and ethical standards of the profession.

We note, for the sake of completeness, that the defendants have neither assigned as error nor argued in their appellate brief that defense counsel should have been permitted to withdraw from representation of one of the defendants, but continue to represent the other defendant. We therefore do not consider whether the conflict of interest present in the instant case would have been resolved by counsels' withdrawal to single representation.

## CONCLUSION

The district court's conclusion that defense counsel have an actual conflict of interest is not clearly wrong, and the court did not err in disqualifying counsel from representing Kawa and Flanagan. The court's orders to that effect are affirmed.

AFFIRMED.