IN RE ESTATE OF CLARA M. WATSON, DECEASED.
EVELYN M. VOLKMER, PERSONAL REPRESENTATIVE OF THE
ESTATE OF CLARA M. WATSON, DECEASED, APPELLEE, V.
MARTHA L. BROWN, SPECIAL ADMINISTRATOR OF THE
ESTATE OF CLARA M. WATSON, DECEASED, ET AL., APPELLANTS.

557 N.W.2d 38

Filed December 10, 1996.    No. A-95-1238.

James E. Bachman for appellants.

Frank C. Heinisch and Jerry D. Anderson, of Heinisch Law Office, and David B. Downing, of Downing, Alexander & Wood, for appellee.

SIEVERS, MUES, and INBODY, Judges.

SIEVERS, Judge.

This appeal concerns whether attorney fees can be paid to a law firm notwithstanding that the firm withdrew from representation due to a conflict of interest. The county court approved the fees, but for the reasons set forth below, we modify the judgment.

## FACTUAL BACKGROUND

The material facts are undisputed. Clara M. Watson, a widow with no living children, owned farmland which she rented to the Les Stephenson family, among other tenants. Beginning in 1972 and continuing to her death, Clara was represented by Frank Heinisch, and later Jerry Anderson, of the Heinisch law firm. The firm also began representing the Stephensons in 1973. Clara died testate on September 16, 1994, with assets totaling over $800,000.

In Clara's will of June 27, 1990, drafted by Anderson, Clara nominated Evelyn M. Volkmer to serve as personal representative of her estate. Evelyn had helped Clara with her income tax returns and other matters since 1958. Evelyn had also been granted power of attorney over Clara in approximately 1990 (the precise date is unclear from the record) and had further been appointed by the court as Clara's conservator on January 19, 1994, at which time the court apparently found that Clara had an " 'organic brain syndrome.' " In her will, Clara made bequests to Evelyn and several members of the Stephenson family, namely Les, Les' children, and Les' grandchildren. Additionally, Clara provided that her late husband's nieces and nephew, Martha L. Brown, Laura Koontz, Dorothy Gaither, and Richard Watson (hereinafter the objectors), would receive a half interest in her residuary estate.

On September 17, 1992, Heinisch was informed by Les that Les and Clara had worked out the details of a sale of 2 quarters

of farmland from Clara to James, Lowell, and Loren Stephenson, Les' sons and grandson. It was Heinisch's understanding that Clara desired to sell to the Stephensons, who had treated Clara like family, the land that the Stephensons had rented from her over the years. At this time, Clara and the Stephensons were all clients of the Heinisch law firm. Heinisch testified that Clara and the Stephensons knew of and favored the firm's continued representation of the other.

Anderson drafted the purchase agreements, which were signed by Clara on September 28, 1992, at the Fillmore County Hospital. Anderson claimed that he did not negotiate the terms, but, rather, merely drafted the provisions related to him by Les. Anderson also claimed that Clara declined independent counsel regarding the transaction. According to Heinisch, Evelyn felt Clara understood the transaction and wanted it to take place. While the purchase agreements are not in the record, it appears that the land was not sold at market value. Evelyn testified that one of the parcels was sold for less than $1,000, and both Anderson and Heinisch claimed that the words "bargain sale" were incorporated into the agreement. According to Heinisch, a similar transaction for another piece of land occurred between Clara and Orville Hafer, another of Clara's long-term tenants, in the spring of 1993.

On February 15 and March 2, 1994, Anderson and Heinisch, respectively, sent letters to Dennis Carlson, Counsel for Discipline for the Nebraska State Bar Association, detailing the above-described transactions. Heinisch's letter was apparently written because of an inquiry, presumably to Carlson, about whether there was a conflict of interest from the Heinisch law firm's simultaneous representation of Clara and the Stephensons. The record does not contain a response from Carlson.

Les died on September 10, 1994, and Clara died 6 days later. Evelyn, whom Clara had nominated as personal representative, retained the Heinisch law firm to represent her concerning Clara's estate. On October 20 and 24, the objectors filed objections to the appointment of Evelyn as personal representative, claiming that Evelyn should not serve as personal representative

because, among other things, (1) Evelyn knew of and participated in three transfers of Clara's real property for less than market value prior to her death; (2) Evelyn knew or should have known that the firm, which represented Clara in the three transfers, had a serious conflict of interest regarding two of the transfers; and (3) Clara did not have the capacity to understand the nature and consequences of her actions when the transfers were made. Additionally, on November 9, the objectors filed a motion to disqualify Heinisch and Anderson as counsel for Evelyn. At a November 23 hearing, the county court granted Heinisch and Anderson leave to withdraw as counsel for Evelyn and accepted the appearance of David Downing as the attorney for Evelyn.

On December 24, 1994, the Heinisch law firm received an opinion from Deryl Hamann, as chairperson of The Advisory Committee for the Nebraska State Bar Association. According to Anderson, the opinion was issued in response to the firm's inquiry as to whether it could represent both Clara's and Les' estates. The advisory committee concluded that continued representation of Evelyn, if she was appointed Clara's personal representative, would violate the provisions of Canon 5 (lawyer should exercise independent professional judgment on behalf of client) and Canon 9 (lawyer should avoid even appearance of professional impropriety) of the Code of Professional Responsibility. Despite their withdrawal as counsel for the personal representative on November 23, Heinisch and Anderson continued to perform legal work on behalf of Clara's estate through January 26, 1995, and such services are included in the fees at issue.

In January 1995, Evelyn, through her counsel Downing, agreed not to object to the appointment of Martha, one of the objectors, as special administrator for the limited purpose of investigating whether it was necessary to bring litigation with respect to the land transfers from Clara to the Stephensons and to the Hafers. In exchange, the objectors agreed to withdraw their objection to Evelyn as personal representative. The county court later appointed Evelyn as personal representative and

Martha as special administrator only with respect to the parcel of real estate transferred from Clara to the Hafers.

In July 1995, the Heinisch law firm filed a claim for attorney fees and expenses against Clara's estate in the amount of $5,671.51, for work performed from September 19, 1994, through January 26, 1995. Evelyn initially filed a notice of disallowance, but later filed a petition for allowance of the claim. The firm also filed a petition in support of its claim for legal fees, which the objectors resisted. At a hearing on October 23, 1995, in Fillmore County Court, counsel for both the firm and the objectors stipulated that the requested attorney fees through and including October 23, 1994 (the day Heinisch recorded 2.2 hours researching conflict of interest issues), were reasonable and should be paid by the estate. Counsel further agreed that the only issue remaining for determination was the liability of Clara's estate for legal services rendered by the firm after October 23.

The county court found that the evidence was clear that "a conflict of interest existed which necessitated the Heinisch firm to withdraw as counsel." The court then evaluated each billing individually to determine if the work performed benefited the estate. The court awarded the firm $5,393.51 of the $5,671.51 requested. The objectors filed a motion for new trial, and the county court, finding that such a remedy was not available, denied the motion. The objectors now timely appeal.

## STANDARD OF REVIEW

This appeal solely concerns a question of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996).

## ANALYSIS

The county court found that the evidence was clear that a conflict of interest existed which required the Heinisch law firm to withdraw as counsel. This conclusion is not attacked on appeal by the firm. We operate on the premise that the firm was disqualified from representation of Evelyn as Clara's personal representative because of a conflict of interest. Indeed, the con-

flict of interest is obvious. Nonetheless, the county court awarded the firm $5,393.51 for work which the court determined had benefited the estate. The question is whether an attorney who performs services despite a conflict of interest may receive compensation for such services. Part of that question is whether it makes any difference that the services were of benefit to the estate.

The trial court determined that the instant case was controlled by Neb. Rev. Stat. § 30-2482 (Reissue 1995), which provides that the county court may review the propriety of the employment by a personal representative of an attorney, as well as the reasonableness of the attorney's compensation while working for a personal representative. Section 30-2482 also lists the factors to be considered as guides in determining the reasonableness of a fee, but reasonableness of the charges is not the issue. Section 30-2482 does not speak directly to the issues presented by this appeal, where the personal representative's attorney withdraws due to a conflict of interest.

Many courts have held that once a conflict of interest or other ethical violation has been established, the attorney is prohibited from collecting fees for his or her services. *Pessoni v. Rabkin*, 220 A.D.2d 732, 633 N.Y.S.2d 338 (1995) (attorney whose multiple representation created conflict of interest was not entitled to legal fees for any services rendered); *Eriks v. Denver*, 118 Wash. 2d 451, 824 P.2d 1207 (1992) (attorney who failed to fully disclose conflict before undertaking multiple representation was disgorged of attorney fees); *In re Estate of McCool*, 131 N.H. 340, 553 A.2d 761 (1988) (attorney not permitted to recover attorney fees where representation of estate was fraught with conflicts of interest from its inception); *Rice v. Perl*, 320 N.W.2d 407 (Minn. 1982) (firm deemed to have forfeited attorney fees for failing to disclose to client-plaintiff its ongoing relationship with defendant's claims adjuster who was negotiating with plaintiff); *Moses v. McGarvey*, 614 P.2d 1363 (Alaska 1980) (attorneys disqualified from representing shareholders in suit against corporation for conflict of interest were barred as matter of public policy from recovering any fee from either of opposed interests, although there was no indication that attor-

neys acted with improper motive); *White v. Roundtree Transport, Inc.*, 386 So. 2d 1287 (Fla. App. 1980) (attorney's right to fee terminates when attorney realizes or should have realized that he cannot ethically represent client's interests); *Jeffry v. Pounds*, 67 Cal. App. 3d 6, 136 Cal. Rptr. 373 (1977) (firm which undertook representation of wife of current client in marital dissolution proceedings was limited to value of services rendered preceding breach of professional standards in action to recover attorney fees in husband's unrelated suit). See, also, 1 Robert L. Rossi, Attorneys' Fees § 3.4 (2d ed. 1995).

Some courts, however, have applied a case-by-case approach, weighing all relevant factors in determining whether attorneys are entitled to the reasonable value of their services. *Kidney Association of Oregon v. Ferguson*, 315 Or. 135, 843 P.2d 442 (1992) (trial court has authority, which may be exercised at court's discretion after consideration of facts, to address breaches of lawyer's duty of loyalty to client by denying part of or all attorney fees); *In re Life Ins. Tr. Agreement of Seeman*, 841 P.2d 403 (Colo. App. 1992) (attorney conflict of interest is only one of many factors to be considered in determining award of fees and does not mandate denial of all compensation). *Garrick v. Weaver*, 888 F.2d 687 (10th Cir. 1989) (where ethics violation lacked actual or substantial prejudice to client, court could award attorney fees equal to reasonable value of legal services rendered); *Crawford v. Logan*, 656 S.W.2d 360 (Tenn. 1983) (each case involving misconduct of attorney does not automatically bring about forfeiture of attorney fees, and any forfeiture must be viewed in light of particular facts and circumstances of case).

■ The Nebraska Supreme Court's ruling in *State ex rel. FirsTier Bank v. Mullen*, 248 Neb. 384, 534 N.W.2d 575 (1995), persuades us that an attorney who performs work, despite a conflict of interest, is generally prohibited from recovering any fees for the work. In *Mullen*, plaintiff's successor counsel to a disqualified law firm sought to protect a fee agreement between it and the disqualified firm from discovery. In this context, successor counsel argued that its disqualified predecessor was entitled to quantum meruit fees for its representation of the client. The court rejected the attorney's argument, specifically holding:

We do not accept the contention that an attorney can receive fees for representation which from the outset gives the appearance of impropriety and is violative of established rules of professional conduct. An attorney may not recover for services rendered if those services are rendered in contradiction to the requirements of professional responsibility and inconsistent with the character of the profession. See, *Eriks v. Denver*, 118 Wash. 2d 451, 824 P.2d 1207 (1992); *In re Estate of McCool*, 131 N.H. 340, 553 A.2d 761 (1988); *Moses v. McGarvey*, 614 P.2d 1363 (Alaska 1980).

*Id.* at 390, 534 N.W.2d at 580. The three cases cited by the Nebraska Supreme Court are cases we have cited above, and they all stand for the general principle that once a conflict of interest has been established, an attorney is prohibited from recovering fees for his services, regardless of any benefit to the client.

From these cases, and the Supreme Court's decision in *Mullen, supra,* we conclude that counsel cannot recover fees when the representation is plainly in violation of the ethical requirements of the profession. Here, the Heinisch law firm was faced with the situation that if the transfers to the Stephenson family were not attacked by the personal representative, the residual beneficiaries of Clara's estate would be unhappy—and if the transfers to the Stephenson family were attacked, obviously the Stephensons would be unhappy. Apart from the unhappiness of one or the other of the firm's clients, it is not possible for the firm to give independent advice on the matter of the transfers and avoid the appearance of impropriety. Representation of Clara's estate in such circumstance is plainly against the ethical requirements of the profession. Additionally, we note that 8 months earlier, attorneys Heinisch and Anderson wrote to the Counsel for Discipline as to whether conflicts existed—and at that time both Clara and Les were alive. However, upon Clara's and Les' deaths, the facts concerning the land transaction became "frozen" and not subject to remediation by either Clara or Les.

Although the conflict likely predated the deaths of Clara and Les to the time of the real estate transfer, it unquestionably

loomed large and plain upon their deaths. Accordingly, the representation of the personal representative of Clara's estate by the Heinisch law firm was in plain violation of the ethical requirements of the legal profession and as such it cannot be the basis for compensation.

At trial, counsel for both parties orally stipulated that the fees charged by the Heinisch law firm through October 23, 1994, should be paid by the estate. October 23 is the date the firm billed 2.2 hours for researching conflict of interest issues.

> "[s]tipulations voluntarily entered into between the parties to a cause or their attorneys, for the government of their conduct and the control of their rights during the trial or progress of the cause, will be respected and enforced by the courts, where such stipulations are not contrary to good morals or sound public policy. Courts will enforce valid stipulations unless some good cause is shown for declining to do so, especially where the stipulations have been acted upon so that the parties could not be placed in status quo. [Citation omitted.]
>
> "Parties are bound by stipulations voluntarily made and relief from such stipulations after judgment is warranted only under exceptional circumstances."

*In re Estate of Mithofer*, 243 Neb. 722, 726-27, 502 N.W.2d 454, 457-58 (1993) (quoting *Martin v. Martin*, 188 Neb. 393, 197 N.W.2d 388 (1972)).

The disallowance of fees generated after a plain violation of the rules of the profession rests upon an obvious policy of prophylaxis. Therefore, we are concerned about according force and effect to a stipulation which authorizes payment for services performed prior to October 23 for Clara's estate, even though the conflict was plain, certainly at least from the time of the deaths of Clara and Les. In short, the stipulation may be contrary to public policy. However, we recognize that appellate courts determine cases on the theory upon which they were tried. *Vejraska v. Pumphrey*, 241 Neb. 321, 488 N.W.2d 514 (1992).

Although this doctrine typically relates to the pleadings upon which a case was tried, see *Central States Resources v. First*

*Nat. Bank*, 243 Neb. 538, 501 N.W.2d 271 (1993), we think it can fairly be said that the parties tried this case to the lower court on the theory that the only issues were whether Clara's estate owed fees to the Heinisch law firm for work performed after October 23, 1994. For this reason, the trial court did not err when it gave effect to the stipulation. However, the stipulation was strictly limited to fees, and therefore, the photocopying, faxing, mailing, and publishing expenses incurred by the firm prior to and including October 23 are not included in the stipulation. The firm's billing record in evidence reveals that Heinisch and Anderson performed 6.4 hours and 11.6 hours of work, respectively, on Clara's estate through October 23. At stipulated billing rates of $95 per hour for Heinisch and $85 per hour for Anderson, the firm is due a total of $1,594.

In summary, we conclude that any attorney services performed by the Heinisch law firm after October 23, at the very latest (given that we accord the parties' stipulation its intended force and effect), were inconsistent with the requirements of professional responsibility and cannot be compensated. Given the need for fealty to the Code of Professional Responsibility, the fact that there may have been benefit to the estate is insufficient to justify payment for services rendered at a time when counsel should not have been representing the client.

Finally, while not determinative of the appeal, we note in passing that the county court erred in concluding, on the Heinisch law firm's motion for new trial, that such a remedy was not available in the instant case. See *132nd Street Ltd. v. Fellman*, 245 Neb. 59, 511 N.W.2d 88 (1994) (pursuant to Neb. Rev. Stat. § 25-2701 (Reissue 1995), provisions for motions for new trial applicable in district court shall apply in county court). See, also, Neb. Rev. Stat. § 30-2437 (Reissue 1995), *DeVries v. Rix*, 203 Neb. 392, 279 N.W.2d 89 (1979). In any event, the appeal was timely filed.

## CONCLUSION

We conclude that an attorney who has a conflict of interest of which he or she knew, or should plainly have known, may not receive attorney fees for legal services rendered to a client after acquiring such knowledge. The judgment of the county court in

the instant case includes fees for services after October 23, 1994, and expenses. Thus, as said above, the judgment must be modified to limit the Heinisch law firm's recovery to what the parties stipulated—which is $1,594. We remand the matter to the county court for entry of judgment in accordance with this opinion.

AFFIRMED AS MODIFIED, AND CAUSE
REMANDED WITH DIRECTIONS.