Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/07/2016 12:12 PM CDT

- 545 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
ROSS, SCHROEDER v. ARTZ
Cite as 23 Neb. App. 545

Ross, Schroeder & George, LLC, a limited
liability company, appellee, v. Lynn Artz
and Dee Artz, appellants.
___ N.W.2d ___

Filed January 26, 2016.    No. A-14-1065.

1. **Courts: Appeal and Error.** The district court and higher appellate courts generally review appeals from the county court for errors appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. ____: ____. In instances when an appellate court is required to review cases for error appearing on the record, questions of law are reviewed de novo on the record.
4. ____: ____. In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, which an appellate court will not disturb on appeal unless clearly wrong. And an appellate court does not reweigh the evidence but considers the judgment in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party.
5. **Contracts.** Whether a contract exists is a question of fact; the meaning of a contract is a question of law.
6. **Contracts: Attorney and Client.** An attorney-client relationship ordinarily rests on contract, but it is not necessary that the contract be express or that a retainer be requested or paid. The contract may be implied from the conduct of the parties.
7. **Contracts: Attorney and Client: Proof.** An attorney-client relationship is created when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney

expressly or impliedly agrees to give or actually gives the desired advice or assistance.

8. **Contracts: Attorney and Client.** No formal contract, arrangement, or attorney fee is necessary to create the relationship of attorney and client; the contract may be implied from the conduct of the parties.

9. **Contracts: Malpractice: Proof.** A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties themselves as to all of the details of the proposed agreement, and a contract may be implied from conduct and circumstances.

10. **Attorney Fees.** Counsel cannot recover fees when the representation is plainly in violation of the ethical requirements of the profession.

Appeal from the District Court for Buffalo County, JOHN P. ICENOGLE, Judge, on appeal thereto from the County Court for Buffalo County, LINDA S. CASTER SENFF, Judge. Judgment of District Court affirmed.

Jeffrey P. Ensz, of Lieske, Lieske & Ensz, P.C., L.L.O., for appellants.

Kent A. Schroeder, of Ross, Schroeder & George, L.L.C., for appellee.

MOORE, Chief Judge, and IRWIN and INBODY, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Ross, Schroeder & George, LLC (RSG), a limited liability company, filed an action in the county court for Buffalo County, seeking to collect the balance of a debt for attorney fees owed by Lynn Artz and Dee Artz for legal services provided to them. The county court found that an attorney-client relationship had been formed between the parties and entered judgment in favor of RSG. The Artzes appealed to the district court, which affirmed the decision of the county court, and then to this court. Finding no error, we affirm.

## BACKGROUND

This case involves a dispute over who is responsible for attorney fees incurred for services provided by Kent Schroeder, an attorney with RSG, in a custody case filed in the district court. The parties in the custody case were Nicole Hasselbalch and Rickey Jackson, the parents of Sydney Hasselbalch (Sydney). The Artzes are Hasselbalch's parents and Sydney's grandparents. At some point, Jackson's attorney in the custody case withdrew. The Artzes then contacted and met with Schroeder, who entered an appearance as counsel for Jackson in the pending custody case. Jackson was unsuccessful in the custody case, and this court affirmed the award of Sydney's custody to Hasselbalch. See *Jackson v. Hasselbalch*, No. A-10-1068, 2011 WL 3849483 (Neb. App. Aug. 30, 2011) (selected for posting to court Web site). RSG subsequently filed the present attorney fees collection action, which raises the issue of whether there was any agreement between RSG and the Artzes that would allow RSG to recover from the Artzes the reasonable value of the services Schroeder provided.

On November 30, 2011, RSG filed a complaint in the county court. RSG alleged that Schroeder, an attorney with RSG, was employed by the Artzes to represent them with respect to the interests of their granddaughter Sydney. RSG alleged that in April 2010, an initial office conference was held and the Artzes paid $2,500, which was deposited into RSG's trust account, and that the balance due from the Artzes to RSG was $18,442.38, for which RSG sought judgment.

In their answer, the Artzes admitted that they may have attended a conference at RSG's office but asserted that they never hired RSG to represent them and never guaranteed any fees to RSG. The Artzes denied the remaining allegations of the complaint and set forth various affirmative defenses, including an assertion that RSG's complaint should be dismissed because the purported agreement between the parties violated the statute of frauds.

- 548 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
ROSS, SCHROEDER v. ARTZ
Cite as 23 Neb. App. 545

Trial was held before the county court on March 7 and May 20, 2014. The parties stipulated that the charges by Schroeder's office of $18,442.38 were fair, customary, and reasonable and that the services charged for were in fact provided. The court proceeded to hear evidence on the issue of whether the Artzes were responsible for payment of those fees.

Copies of the transcript in the custody case and this court's memorandum opinion following the appeal in the custody case, as well as documents from the transcript in a guardianship case involving Sydney, were admitted into evidence as exhibits in this case. We briefly outline the background and history of those cases to provide context for the establishment of the parties' relationship in the present case.

Sydney was born to Hasselbalch and Jackson in 2002, at which time Hasselbalch and Jackson both resided in Lincoln, Nebraska. Hasselbalch and Jackson were not married to one another. Jackson had contact with Sydney of varying degrees from her birth until 2006 when Hasselbalch met and began cohabitating with Clinton Williams. Jackson had no contact with Sydney between summer 2006 and February 2009. Hasselbalch and Williams moved to Texas in 2008, and Sydney resided with the Artzes for a period of some months prior to returning to Hasselbalch's care in Texas. In February 2009, Hasselbalch was residing with Williams in Texas and experiencing difficulties caring for Sydney. She asked Dee to help, and Dee took Sydney into her physical custody and cared for her in Kearney, Nebraska. In February 2009, Jackson reestablished and maintained consistent contact with Sydney, including caring for her on weekends in Lincoln.

On December 10, 2009, Dee filed a petition in the county court seeking appointment as Sydney's guardian. The county court appointed Dee as temporary guardian. The temporary guardianship was vacated after a temporary custody order was entered in the custody case in March 2010. The guardianship case was dismissed by the court in March 2011 during the pendency of the appeal in the custody case.

- 549 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
ROSS, SCHROEDER v. ARTZ
Cite as 23 Neb. App. 545

On February 16, 2010, Jackson filed a complaint in the district court seeking custody of Sydney. At that time, Jackson was represented by an attorney other than Schroeder. Jackson requested temporary custody, and he alleged that Williams had abused Sydney and that Hasselbalch failed to protect her. On March 15, the court entered an order granting Jackson's request for temporary custody. Jackson, who was still living in Lincoln, allowed Sydney to remain in Kearney with the Artzes to complete the school year.

On March 24, 2010, Jackson's first attorney was allowed to withdraw as attorney of record in the custody case. Schroeder entered his appearance as counsel of record for Jackson on April 22.

Trial was held in the custody case on September 27, 2010, and on October 4, the district court entered an order placing primary legal and physical custody of Sydney with Hasselbalch, subject to parenting time with Jackson as set forth in the order. Schroeder filed a notice of Jackson's intent to appeal, and on October 4, 2011, this court issued our mandate affirming the decision in the custody case.

We now set forth the evidence with respect to the Artzes' relationship with Schroeder. The Artzes accompanied Jackson when he retained his first attorney of record in the custody case. Jackson did not have money to pay the retainer requested by the first attorney, so Lynn wrote the check for this $2,500 fee. The check has a notation stating, "Loan to . . . Jackson Legal Fees for Sydney." After Jackson's first attorney in the custody case withdrew, he asked the Artzes to help him find an attorney. Dee was also "very worried about [Sydney's] situation." The Artzes discussed the matter with "[their] attorney," who recommended Schroeder. The Artzes met with Schroeder on April 10, 2010. Jackson was supposed to attend the initial conference but was unable to leave work.

Dee testified that the RSG receptionist gave them a client questionnaire form to fill out without any further instructions. Dee filled out sections of the form. In the area of the form for

- 550 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
ROSS, SCHROEDER v. ARTZ
Cite as 23 Neb. App. 545

the client's name, Dee wrote "Lynn & Dee Artz," although she testified that "we weren't the clients." Schroeder testified that he relies upon this form to gather basic contact information and to "identify who [his] client is." There is a place on the form to indicate whether someone else will be responsible for the account, which Dee left blank. Dee testified that she did not complete this portion of the form because "the questionnaire wasn't even pertaining to us, because we weren't the clients." Schroeder testified that if the Artzes had indicated on the form that Jackson was going to be responsible for the bill, he would have had the Artzes sign a guarantee, but he did not ask them to do so because they left that portion of the form blank. Near the bottom of the form is the following printed statement: "DURING THE INITIAL CONFERENCE, YOU SHOULD DISCUSS THE LEGAL FEES EXPECTED TO BE INCURRED WITH THE ATTORNEY. IN MOST INSTANCES, [RSG] REQUIRE[S] THAT BOTH THE CLIENT AND THE ATTORNEY EXECUTE A CONTRACT FOR LEGAL SERVICES." It is undisputed that no such express contract was executed by the parties.

After the initial conference, the Artzes paid a retainer of $2,500 to RSG. The check was dated April 19, 2010. A notation on the check states, "Retain Fee . . . Schroeder[;] Lynn Loan . . . Jackson." A receipt given to the Artzes states that the $2,500 was received from "Lynn . . . for . . . Jackson."

Schroeder testified that he understood that the Artzes were his clients and that he would be representing Jackson "in a representative capacity" in the custody case. He testified that with respect to the custody case, the Artzes wanted to be able to provide Sydney a safe living environment with them and that the common goal of the Artzes and Jackson in that case was for Sydney to continue residing with the Artzes and attend school in Kearney. According to Schroeder, he told the Artzes that he would have to technically make an appearance of record for Jackson because he was the one who had standing to ask the court to determine Sydney's custody, but

- 551 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
ROSS, SCHROEDER v. ARTZ
Cite as 23 Neb. App. 545

that hopefully, if they prevailed, Jackson would continue to agree to allow Sydney to reside with the Artzes in Kearney. He testified that throughout the custody litigation, the Artzes were the ones who suggested trial strategies and he believed and understood he was working for the Artzes. The Artzes and Jackson all testified that Schroeder told the Artzes that they were not his clients and that Jackson was. Schroeder did not recall ever specifically telling Lynn, in the presence of Dee and Jackson, "[Lynn], I am not your attorney." Schroeder also testified, "I don't think I ever said that [Jackson] was my client. I said that I was his attorney of record." He testified further that he represented that he was Jackson's attorney because Jackson had to be the named plaintiff in the custody case.

After Schroeder entered an appearance in the custody case, the Artzes contacted him on a regular basis throughout the proceedings. While we have not detailed those contacts, the record shows that Schroeder had numerous contacts with the Artzes in person, by e-mail, and by telephone and had only limited contact with Jackson. The Artzes sought Schroeder's advice and gave him information concerning the case. When discovery was ongoing in the custody case, it was sent to the Artzes and not Jackson. The Artzes suggested to Schroeder questions to ask and witnesses to call at trial. Schroeder testified that with respect to decisions as to how the custody case was to proceed, the Artzes "called the shots."

A letter from Schroeder regarding the district court's final order in the custody case was addressed to both Jackson and Dee. The Artzes advised Schroeder that they wanted to appeal following the district court's decision in the custody case. The Artzes also provided a 5-page narrative of events that occurred after the custody decision, which they believed should be used in the appeal. Lynn hired a private detective to investigate whether Williams was still living with Hasselbalch in hopes of using the information to modify the custody decision. When Lynn received the report

- 552 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
ROSS, SCHROEDER v. ARTZ
Cite as 23 Neb. App. 545

from the private detective, he provided the information to Schroeder's office.

Schroeder did not have any conversations with the Artzes regarding how the bill would be sent for the services he was going to provide. He testified, however, that his understanding "from day one" was that his fee was going to be paid by the Artzes. In an e-mail to the Artzes, an employee of RSG asked them what arrangements they would be making to pay the bill. The record shows that monthly statements for Schroeder's services were addressed to Jackson in care of Dee and sent to the Artzes' address. The Artzes did not contact Schroeder and advise him to send the bills elsewhere.

Dee testified that they never promised to pay Schroeder for Jackson's legal fees. According to Dee, Lynn had given a loan to Jackson to make the initial fee payment. As of the trial date, Jackson had not paid any money toward the "alleged loans that [the Artzes] made him." Likewise, he had not made any payments directly to Schroeder or contacted Schroeder to make arrangements for payment. Dee testified that she gave the monthly statements to Jackson unopened. Jackson testified, however, that he only received one statement from Dee. Jackson testified that he believed Schroeder to be his attorney, that the bill is his responsibility, and that he intends to pay it.

On May 30, 2014, the county court entered judgment in favor of RSG for $18,442.38, plus costs and postjudgment interest in the statutory amount. The court applied the factors set forth by the Nebraska Supreme Court in *McVaney v. Baird, Holm, McEachen*, 237 Neb. 451, 466 N.W.2d 499 (1991), and found the evidence clear that the Artzes had an attorney-client relationship with Schroeder. The court stated:

> A person can develop an attorney-client relation-
> ship with more than one party. It is clear that . . .
> Schroeder was the attorney of record for . . . Jackson
> and in that capacity had an attorney-client relationship
> with him[.] That does not preclude him from having an

- 553 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
ROSS, SCHROEDER v. ARTZ
Cite as 23 Neb. App. 545

attorney-client relationship with the [Artzes] at the same time as long as no conflict exists. . . . Schroeder testified he believed there was no conflict. In the facts as related to the court, it did not appear that a conflict existed and none has been claimed. There are cases that hold that if an attorney represents a client in violation of the professional code of conduct that they may not be compensated for that representation. That is not the case here.

The court stated further:

The [Artzes] should not be allowed to benefit from the services of . . . Schroeder and avoid payment for those services. Having considered all of the relevant evidence, the court finds that the relationship between . . . Schroeder and the [Artzes] was one of attorney-client. [RSG] is entitled to receive the reasonable value of the services rendered. The fair and reasonable value of those services is outlined in [the stipulation at trial].

The Artzes appealed to the district court, which entered an order affirming the judgment of the county court on October 30, 2014. The Artzes subsequently perfected their appeal to this court.

## ASSIGNMENTS OF ERROR

The Artzes assert that the district court erred in affirming the county court's finding that an attorney-client relationship existed between the Artzes and Schroeder and in its entry of judgment in favor of RSG.

## STANDARD OF REVIEW

[1-3] The district court and higher appellate courts generally review appeals from the county court for errors appearing on the record. *Griffith v. Drew's LLC*, 290 Neb. 508, 860 N.W.2d 749 (2015). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* In instances when an appellate court is required to review cases for error

- 554 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
ROSS, SCHROEDER v. ARTZ
Cite as 23 Neb. App. 545

appearing on the record, questions of law are reviewed de novo on the record. *Id.*

[4] In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, which an appellate court will not disturb on appeal unless clearly wrong. And an appellate court does not reweigh the evidence but considers the judgment in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party. *Id.*

[5] Whether a contract exists is a question of fact; the meaning of a contract is a question of law. See *Braunger Foods v. Sears*, 286 Neb. 29, 834 N.W.2d 779 (2013).

## ANALYSIS

The Artzes assert that the district court erred in affirming the county court's finding that an attorney-client relationship existed between the Artzes and Schroeder and its entry of judgment in favor of RSG.

[6,7] In determining that an attorney-client relationship existed between the Artzes and Schroeder, the county court applied the three-factor test for the existence of an attorney-client relationship set forth by the Nebraska Supreme Court in *McVaney v. Baird, Holm, McEachen*, 237 Neb. 451, 466 N.W.2d 499 (1991). In *McVaney*, the Supreme Court was required to determine whether an attorney-client relationship existed between the parties in connection with the plaintiff's malpractice lawsuit against the law firm. The Supreme Court observed that an attorney-client relationship ordinarily rests on contract, but it is not necessary that the contract be express or that a retainer be requested or paid. *Id.* The contract may be implied from the conduct of the parties. *Id.* The Supreme Court then determined that an attorney-client relationship is created when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually

- 555 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
ROSS, SCHROEDER v. ARTZ
Cite as 23 Neb. App. 545

gives the desired advice or assistance. *Id*. See, also, *Swanson v. Ptak*, 268 Neb. 265, 682 N.W.2d 225 (2004). Although there was no express employment agreement in *McVaney*, the Supreme Court held that an attorney-client relationship existed where there was evidence of a longstanding relationship between the plaintiff and the attorney and there was both general and specific discussion of what action the plaintiff wanted the attorney to perform.

In the present case, the Artzes argue that the test for the existence of an attorney-client relationship set forth in *McVaney v. Baird, Holm, McEachen, supra*, is exclusively a test for determining the existence of such a relationship in attorney negligence cases. We disagree. There is nothing in *McVaney* limiting the test to application only in the context of claims of attorney negligence. And, contrary to the Artzes' assertion, the test has been applied in other contexts. See, *State ex rel. Stivrins v. Flowers*, 273 Neb. 336, 729 N.W.2d 311 (2007) (considering whether attorney-client relationship existed between attorney and witness seeking to assert attorney-client privilege); *Detter v. Schreiber*, 259 Neb. 381, 610 N.W.2d 13 (2000) (examining attorney-client relationship in context of closely held corporation to determine whether attorney should be disqualified from representing one shareholder in action against other shareholder); *Richardson v. Griffiths*, 251 Neb. 825, 560 N.W.2d 430 (1997) (in action to rescind purchase agreement, purchasers sought to disqualify law firm from representing sellers).

[8,9] The Artzes next argue that because no written agreement was created regarding Schroeder's services, the county court should have examined whether an implied contract existed between the Artzes and Schroeder. The Artzes assert that because there was no "meeting of the minds" between Schroeder and them, no implied contract existed. Brief for appellants at 11. In *McVaney v. Baird, Holm, McEachen*, 237 Neb. 451, 466 N.W.2d 499 (1991), the Nebraska Supreme Court observed that no formal contract, arrangement, or

- 556 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
ROSS, SCHROEDER v. ARTZ
Cite as 23 Neb. App. 545

attorney fee is necessary to create the relationship of attorney and client; the contract may be implied from the conduct of the parties. The Supreme Court further observed that a binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties themselves as to all of the details of the proposed agreement, and a contract may be implied from conduct and circumstances. *Id.*

Applying the test set forth in *McVaney* to the facts of the present case, we find no error in the county court's determination that an attorney-client relationship existed between the Artzes and Schroeder. Although no written contract existed between the Artzes and Schroeder, an attorney-client relationship can be implied from their conduct. The Artzes sought advice or assistance from Schroeder, an attorney with many years of professional experience in the area of family law. They sought an office consultation, filled out a client questionnaire form identifying themselves as the clients, and paid the initial retainer amount of $2,500. Specifically, they asked Schroeder to appear as the attorney of record for Jackson in the custody case, a matter within Schroeder's professional competence, with the goal of providing Sydney a safe living environment and allowing her to continue residing with the Artzes and attending school in Kearney. There is no question that Schroeder actually gave the desired assistance. He entered an appearance in the custody case, interacted extensively with the Artzes during the course of those proceedings, represented Jackson at the trial, and pursued an appeal at the Artzes' request. We find no clear error in the county court's finding that an attorney-client relationship was created in this case between the Artzes and Schroeder, as there was competent evidence to support this finding.

[10] The Artzes next point to the county court's finding that an attorney-client relationship was also created between Schroeder and Jackson by virtue of Schroeder's appearance as attorney of record for Jackson in the custody case. They argue

- 557 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
ROSS, SCHROEDER v. ARTZ
Cite as 23 Neb. App. 545

that counsel cannot recover fees when the representation is plainly in violation of the ethical requirements of the profession. *In re Estate of Watson*, 5 Neb. App. 184, 557 N.W.2d 38 (1996).

Neb. Ct. R. of Prof. Cond. § 3-501.7 permits an attorney to represent more than one person if no conflict of interest exists. In this case, the county court found that Schroeder's attorney-client relationship with Jackson did not preclude him from having an attorney-client relationship with the Artzes as long as no conflict existed. The court found no evidence of a conflict and observed that none had been claimed. We find no error in this determination.

The Artzes do not argue a violation of § 3-501.7 on appeal. Instead, they argue that, to the extent the Artzes "called the shots" in the custody case, this was a violation of Neb. Ct. R. of Prof. Cond. § 3-505.4(c) which prohibits a lawyer from permitting someone who pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services. See brief for appellants at 21. However, Neb. Ct. R. of Prof. Cond. § 3-501.8(f) provides that a lawyer may accept compensation from a third party as long as there is no interference with the lawyer's independent professional judgment and the client gives informed consent. In this case, the record shows that the Artzes and Jackson had the same objective with respect to the custody case; namely, that Jackson be awarded custody of Sydney and that Jackson allow Sydney to continue residing with the Artzes in Kearney. Jackson clearly sought the Artzes' involvement and assistance in the custody case, including their sharing of relevant information with Schroeder. There is nothing to show that the Artzes directed or regulated Schroeder's legal judgment in a way that violated § 3-505.4(c) or § 3-501.8(f).

Next, the Artzes argue that, assuming the Artzes employed Schroeder to represent Jackson and agreed to pay his fees, any such agreement was not in writing and would thus be void as

- 558 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
ROSS, SCHROEDER v. ARTZ
Cite as 23 Neb. App. 545

a violation of the statute of frauds. In support of their argument, they cite Neb. Rev. Stat. § 36-202(2) (Reissue 2008), which provides that "every special promise to answer for the debt, default, or misdoings of another person" shall be void unless it is in writing. While the county court did not specifically address this statute of frauds defense, the court's rejection of this defense is implicit in its judgment. We conclude that the statute in question is inapplicable as RSG is not seeking in this case to have the Artzes answer for Jackson's debt, but, rather, for their own debt.

Finally, the Artzes argue that the county court improperly applied a benefit analysis to its ultimate finding. Specifically, they cite the court's finding that the Artzes should not be allowed to benefit from Schroeder's services and avoid payment for those services. This argument is without merit.

"Unless the circumstances show that the services were intended to be gratuitous, where services are rendered by an attorney at the request of another, or where the benefits of such services are knowingly accepted, a promise to pay therefor will be presumed, particularly where it would be inequitable for the party benefited to share the benefit without contributing to the expense. Thus, where there is even slight proof of an employment of the attorney by the client, the fact that the latter stood by without objection and allowed the attorney to render valuable services in his behalf will estop him to deny the fact of employment. The acquiescence must be such as presumes volition on the part of the person sought to be charged, however, and there is no acquiescence where he has no choice but to avail himself of the efforts made by the attorney."

*In re Guardianship & Conservatorship of Tucker*, 9 Neb. App. 17, 22-23, 606 N.W.2d 868, 872 (2000), quoting 7A C.J.S. *Attorney & Client* § 288 (1980).

In this case, the circumstances do not show that the services rendered by Schroeder were intended to be gratuitous. As set

forth above, the record shows Schroeder's employment by the Artzes. Schroeder rendered valuable services on their behalf, and they knowingly accepted those services. The county court did not err in finding they were responsible for payment of those services.

## CONCLUSION

The district court did not err in affirming the judgment of the county court. The county court's decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

AFFIRMED.